In re McGOVERN.

(Surrogate's Court, New York County. August, 1908.)

1. EXECUTORS AND ADMINISTRATORS (§§ 89, 118*)—LIABILITY—LOST ASSETS.

An administrator is accountable to the estate for assets wasted or lost through his acts from the time of decedent's death to the time of issuance of letters, or for his failure to use diligence to recover assets after his appointment.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 394, 472–482; Dec. Dig. §§ 89, 118.*]

2. EXECUTORS AND ADMINISTRATORS (§ 93*) — LIABILITY OF ADMINISTRATOR — CONTINUING DECEDENT'S BUSINESS.

Where, immediately after decedent's death, his relatives determined that his sister should become administratrix and should continue dece-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dent's saloon business, and after four months she was appointed administratrix, she was responsible to the estate for all losses incurred in continuing the business either before or after the letters issued and was chargeable with the assets of the business left by the decedent.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 407; Dec. Dig. § 93.*]

3. CHATTEL MORTGAGES (§ 197*)—FAILURE TO REFILE—LOSS OF LIEN.

Where a decedent had given a chattel mortgage, but the mortgagee had failed during the decedent's lifetime to make the yearly refilings required by Chattel Mortgage Act (Laws 1897, p. 538, c. 418), § 95, the mortgage was void as against the creditors of decedent, though none of them had reduced their claims to judgment.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 430–. 433; Dec. Dig. § 197.*]

4. EXECUTORS AND ADMINISTRATORS (§ 118*)—LIABILITY OF ADMINISTRATRIX—FAILURE TO PROTECT ASSETS.

Where a mortgagee had failed to refile a chattel mortgage yearly as required by Chattel Mortgage Act (Laws 1897, p. 538, c. 418), § 96, and after the death of the mortgagor foreclosed the mortgage and sold the property, it was the duty of the administratrix to resist the foreclosure, and she was accountable to the general creditors for failing to protect their rights by resisting the foreclosure sale.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 118.*]

5. EXECUTORS AND ADMINISTRATORS (§ 118*) — PROTECTION OF DECEDENT'S ASSETS.

Though the authorities were in conflict at the time of a foreclosure of a chattel mortgage as to the right of creditors where the chattel mortgage had not been refiled yearly as required by law, yet it did not excuse an administratrix of the mortgagor from liability in not resisting the foreclosure; it not appearing that she sought the advice of counsel on that subject or failed to act because of such conflict.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 118.*]

6. EXECUTORS AND ADMINISTRATORS (§ 507*)—ACCOUNTING—REFEREES—POWER OF REFEREE.

A referee on an accounting by an administratrix has no power to pass on the question of allowances, costs, and taxable disbursements.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2186; Dec. Dig. § 507.*]

In the matter of judicial settlement of the account of Margaret McGovern, administratrix. Referee's report modified and confirmed.

The following is the report of Wilbur Larremore, Referee:

John McGovern, who had conducted a saloon at No. 333 Ninth avenue, in the borough of Manhattan, city of New York, died on August 12, 1905. He had lived in the "upstairs" portion of the premises with his invalid aunt, Margaret McGovern, Sr., and his sister, Margaret McGovern, the present administratrix. The decedent's illness lasted less than five days, and during this period the saloon was conducted by the bartenders, as far as the testimony shows, without supervision or advice from any one. The saloon was closed at the time of his death and so remained until the day after the funeral. Upon its reopening an understanding was had to which Margaret McGovern, who afterwards became the administratrix, was a party, that the business should be continued under the management of Owen McGovern, a cousin of the decedent. Such understanding comprehended that Margaret McGovern should apply for letters of administration. Margaret McGovern consulted with an attorney at law, and a letter from him in evidence shows that as early as September 18, 1905, he was acting as attorney for the estate of John McGovern,

and that the matter of taking out letters of administration was in contemplation. Letters were not issued, however, until December 12, 1905, and no sufficient reason is assigned for the delay in applying for them. The business was continued under the management of said Owen McGovern from the day after the funeral in August down to the time of the issue of letters of administration and thereafter until February 8, 1906, when the foreclosure of a chattel mortgage held by Flanagan, Nay & Co. upon the bar and fixtures of the establishment necessarily brought the business to an end.

I find from the evidence that Margaret McGovern, the administratrix, both before and after her appointment as such, was a consenting party to the arrangement by which the business was continued. She was represented by counsel during all this period, and, if she was not cognizant of all matters of detail, she had general knowledge of everything that took place and assumed responsibility therefor.

A person who is appointed administratrix after a considerable lapse of time from the decedent's death, and who is ignorant of what has been done by volunteers or trespassers during the interval, will not necessarily be charged for waste of or loss to the estate. When the letters are issued, however, her authority, if not entire responsibility, relates back to the time of the death, and it is her duty to use reasonably diligent effort to recover any assets or property that may have been dissipated and to enforce any liability that may exist against volunteers or trespassers.

In the present case it would seem that the personal responsibility as well as the authority of the administratrix related back to the time of the death because she was a consenting party, with actual knowledge and even represented by counsel, to the continuation of the business, before as well as after her appointment. Moreover, it does not appear that she has made any attempt to enforce any claims that might exist against Owen McGovern or other persons for illegal interference or conversion. The business was conducted at a loss, so that at the time when it was closed in February, 1906, there remained nothing but a cash balance of $176.96 to show for whatever value there had been in the stock as it existed when John McGovern died. The rule of law is well settled that, if an administrator without authority continue a business, any profits and enhancement of value inure to the benefit of the estate, and on the other hand, he is personally liable for all losses sustained. It is stipulated between counsel that, at the time of the death of John McGovern, the store contained a stock of wines, liquors, cigars, etc., of the aggregate value of $1,362.-70. I am of opinion that the administratrix must be charged with that amount on this accounting.

The bar fixtures and furnishings of the saloon, although owned by the decedent, were covered by a chattel mortgage to De Witt C. Flanagan and Christopher H. R. Woodward, as trustees, to secure the sum of $2,500, which mortgage was originally filed in the register's office in New York county on the 25th day of August, 1903; but such mortgage had not been refiled. It was foreclosed in or about the month of February, 1906, and the property was sold and bought in by one Patrick G. Tighe, who was closely affiliated in business relations with the mortgagees. Counsel for the general creditors contend that this mortgage, because of the neglect to refile it, was void as to them, and that it was the legal duty of the administratrix to resist the foreclosure in order to prevent the preference of the debt for which it had stood as security, and that as she entirely neglected to do so she must be charged with the fair value of the mortgaged property. Counsel for the mortgagees and for the administratrix and her surety rely upon the well-known principle that an unfiled or unrefiled chattel mortgage is good between the parties, and also upon decisions holding that creditors cannot take advantage of a neglect to file or refile unless they are judgment creditors. In the recent case of Skilton v. Codington, 185 N. Y. 80, 86, 77 N. E. 790, 792, 113 Am. St. Rep. 885, Chief Judge Cullen remarked: "It is true there is to be found in some cases a statement that the mortgage is void only as to judgment creditors. This statement, if construed in the light of the case before the court and with reference to the context of the opinion, is substantially correct, though not strictly accurate as a general proposition. * * * The rule that a creditor must first recover a judgment is simply one of procedure and does not affect the right. Therefore, where the recovery of

a judgment becomes impracticable, it is not an indispensable requisite to enforce the rights of the creditors."

Relying upon this case as the most recent statement of the law, I shall, under the facts as they appear, uphold the contention of the creditors. This determination has been reached after careful consideration, and in the belief that Skilton v. Codington, supra, lays down the law differently from what it was formerly supposed to be. The actual decision is that a trustee in bankruptcy, under section 67 of the present bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]), may attack in the interests of the creditors an unfiled chattel mortgage. It would be difficult to reconcile this decision, and Chief Judge Cullen's reasoning with the decision and much that was said by the court in Sheldon v. Wickham, 161 N. Y. 500, 55 N. E. 1045, in which latter case it was apparently held that an unfiled chattel mortgage was void only as against creditors who had procured a judgment and were in position to acquire a lien. The Court of Appeals, in Skilton v. Codington, supra, reversed the decision of the Appellate Division in the same case (105 App. Div. 617, 93 N. Y. Supp. 460), where it was held that a trustee in bankruptcy, not representing any creditor who had obtained a judgment and issued execution, could not avoid the unfiled chattel mortgage. Chief Judge Cullen refers to the decision of the United States Circuit Court of Appeals, Second Circuit, in Re Economical Printing Company, 110 Fed. 514, 49 C. C. A. 133, holding that a trustee in bankruptcy could attack a chattel mortgage for default in filing only to the extent of the claims of judgment creditors, saying that the eminent judge who wrote in that case misconceived "the law of the state in this respect." That eminent judge presumably, however, had endeavored to ascertain the law of New York from the then latest decisions of the Court of Appeals, and the same federal Circuit Court of Appeals, in Re Gerstman, 157 Fed. 549, 85 C. C. A. 211, has now taken the opposite position from that assumed in Re Economical Printing Company, placing the decision squarely upon the formulation of the New York law in Skilton v. Codington.

Counsel for the mortgagees and for the surety of the administratrix claim that the case of a trustee in bankruptcy is distinguishable from that of an administrator because of the special authority conferred by the present bankruptcy act—which was not given by Act March 2, 1867, c. 176, 14 Stat. 517—to attack claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt. I cannot see, however, that such distinction is valid, because any authority derivable from the provisions of the bankruptcy act hinges entirely upon the law of the state as laid down by its highest court, which the federal courts will follow, as to what are or are not valid liens. The essential question turns upon state law and not upon an attempt on the part of Congress to interfere with state regulation of chattel mortgages.

There are other expressions in the opinion of Chief Judge Cullen in the Codington Case which also seem to support the general proposition that, while the obtaining of a judgment is a part of the necessary procedure in order for a creditor himself to override an unfiled chattel mortgage, the mortgage is nevertheless void and may be set aside in his behalf by any person, such as an administrator, acting in a representative capacity for the creditors. Obtaining a judgment is an essential step of the process of a creditor seeking individually by superior diligence to enforce his own rights, but is not requisite under other circumstances.

On principle the position of an administrator—so far only, of course, as he represents creditors—is analogous to that of a trustee in bankruptcy. Upon the death of a debtor, similarly as upon the commencement of bankruptcy proceedings, the conflict of diligence must cease, and there follows an enforced rule of equality. It is true a creditor may obtain a judgment against the administratrix; but he cannot thereby gain for himself anything more than a ratable share with nonjudgment creditors of the net assets of the estate. Schmitz v. Langhaar, 88 N. Y. 503. Considering the decision in Skilton v. Codington carefully as a whole, it seems to me to have been the purpose of the court to construe the chattel mortgage act (Laws 1897, p. 538, c. 418, § 95) according to its express terms, declaring an unfiled or unrefiled chattel mortgage void as to creditors, thereby invalidating all preferences by way of lien and

producing equality of distribution. This position is in accord with that taken by the courts of several sister states under similar chattel mortgage acts. Such cases are to the effect that an administrator has power, and it is his duty, to attack a chattel mortgage, void for want of refiling, not for the benefit of next of kin, but in behalf of creditors, and where a statute in direct language declares a chattel mortgage void as to creditors there would seem to be no good reason why such view should not be taken. See Nice's Appeal, 54 Pa. 200; Becker v. Anderson, 11 Neb. 493, 9 N. W. 640; Kilbourne v. Fay, 29 Ohio St. 264, 23 Am. Rep. 741; First Nat. Bank v. Ludvigsen, 8 Wyo. 230, 56 Pac. 994, 57 Pac. 934, 80 Am. St. Rep. 928.

I have discussed the matter so far according to general principles. It also, however, appears that the question in dispute was in effect decided in favor of the general creditors by the Second Appellate Division of the Supreme Court in Matter of Van Houton, 18 App. Div. 301, 46 N. Y. Supp. 190. The court there used the following language: "Assuming, as by reason of the abatement of the legacy we do, that the livery stable property as to the creditors of the testator may be treated as part of the assets of the estate of the decedent, the omission to refile the Cunningham and Depew chattel mortgages, as provided by the statute, rendered the lien of them ineffectual as against such creditors. Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073; Stephens v. Perrine, 143 N. Y. 476, 39 N. E. 11."

The point was not reasoned or discussed, but merely assumed by the Appellate Division; but its opinion seems to state a rule in accordance with the principles which have since been laid down in Skilton v. Codington, supra, and by the above-cited cases from other jurisdictions. If it is proper for an executor to charge himself as assets with the full value of property upon which there were unfiled or unrefiled chattel mortgages, it would follow that it is his duty to disregard such mortgages in the interests of the creditors and attack and avoid them if the mortgagees attempt to assert preferential liens.

I conclude therefore that the administratrix had authority to resist foreclosure of the chattel mortgage, that it was her duty to do so, and the remaining question is whether she shall be held liable as for a devastavit for neglect of such duty.

What has been said, of course, tends to show that the law as to authority to attack unfiled chattel mortgages, except in behalf of judgment creditors, was doubtful and unsettled. The mortgage in question was foreclosed in February, 1906, and the decision of the Court of Appeals in Skilton v. Codington, supra, was not rendered until the following April. It might be urged with considerable force that when the administratrix suffered the foreclosure to take place the decision in Skilton v. Codington by the Appellate Division, relating to trustees in bankruptcy, which was then the law of that case, tended to uphold the validity of the mortgage. On the other hand, however, there was the decision of the Second Appellate Division of the Supreme Court, in Matter of Van Houton, supra, directly passing upon the property right of executors. If the law to govern an administrator's duties be confused, it is incumbent upon him to apply to the courts to have it determined. In the present case it does not appear that any consideration whatever was given to the question of suffering the mortgagees to foreclose and take the property. There are several cases holding that under adverse or uncertain conditions of fact, as, for example, a debtor's probable insolvency, or the difficulty of obtaining proof, if an administrator, following the advice of counsel, neglect to prosecute a claim, he will not be held liable. In all the cases I have found on the subject, the factor of advice of counsel is treated as important. It is not shown here that counsel were especially consulted about the mortgage. Indeed, the general counsel to whom the administratrix had referred everything had previous to their retainer by her acted as attorney for the mortgagees in various transactions.

In my view the status of the administratrix as representative of the creditors, the invalidity of the mortgage as to creditors, and her neglect to take any steps to uphold their rights presumptively render her liable as for a devastavit, and such presumption has not been rebutted by any evidence that has been given in the administratrix's behalf. My conclusion, accordingly, is that she must be charged with the value of the mortgaged property, which

I find to be $2,500, or so much thereof as shall be necessary to make up any deficiency in paying the aggregate claims of creditors after appropriating to such claims the entire net balance of the estate. The mortgagees for the purpose of such calculation must be classed among the general creditors; but the mortgage is valid for any balance as against their next of kin.

It is further contended that the administratrix should be charged with the value of the good will of the decedent's business, and I think this claim is sound, though it may be difficult to fix such value. No attempt of any kind was made to realize for the estate upon such good will. The business was continued down to the time of the foreclosure of the chattel mortgage, and the property was bought in by Patrick G. Tighe, who represented the mortgagees and also was agent of the owner of the building of which the decedent was tenant. After the foreclosure the premises were leased to one Frank Fay, who is now in possession and conducting the old business therein. An attempt has been made to show that the tenant rights of the decedent were in themselves of some value. The term was an indefinite one, with rent payable monthly, and evidence was introduced to the effect that the monthly rental value was more than the rent actually paid. Even on the theory that this use and occupation were governed by section 202 of the real property law (Laws 1896, p. 591, c. 547), providing that agreements for occupation of real property in the city of New York not specifying the duration of the occupation shall be deemed to continue until the 1st day of May next after the possession commences, it is doubtful whether for a term of only about eight months a purchaser could be found who, without other consideration, would pay a substantial sum of money. Moreover, I deem it established by the testimony of Patrick G. Tighe that the statute referred to does not apply, because the decedent had agreed that a new arrangement as to the occupation should go into effect on the following January at an enhanced monthly rent. It is, however, shown that the good will, even in contemplation of such increased rent, would have been of some value. It appears that the decedent himself paid a large sum for the business when he first took it. It also appears that when said Frank Fay went into the premises in February, 1906, under an agreement to pay such higher rent, he paid Patrick G. Tighe, who controlled the building as agent and also had bought in the fixtures, the sum of $1,000, not for anything tangible, but for the simple advantage of continuing the business in that place. There is evidence tending to show that the decedent had conducted the business at a profit and not at a loss. It would not be legitimate to rely entirely on evidence of this kind, because future success or failure of the business would depend to a large extent upon the ability of the person conducting it. I have, however, considered all the evidence, and, in view of the actual payment made by Fay, I shall take that as a substantially fair indication of what the good will was worth a few months before such payment was made. If anything, I should be inclined on the evidence as a whole to fix the value of the good will at something above rather than below that amount, but accept it as a reasonably practical indication of what is necessarily a vague and intangible right. I therefore find that the administratrix is chargeable with the sum of $1,000 as representing the value of the good will.

The decedent at the time of his death had paid for a liquor tax certificate for the current year, which, although taken out in the name of another person, was beneficially owned and used by decedent. Under the provisions of the liquor tax law (Laws 1896, p. 67, c. 112, § 25), this certificate was surrenderable, and the estate was entitled to receive back the ratable proportion of the total amount paid for the whole year according to the time which the license had yet to run. This amounted to 8 months and 19 days at the time of his death. Allowing a reasonable time for the taking out of letters to one who intended from the first to apply for them, and she having entirely neglected to collect this redeemable value, I deem it reasonable and just to charge her with the redeemable value for eight months—that is, for the sum of $800 —and she will accordingly be charged with that amount on account of such certificate.

During the four days preceding John McGovern's death the business in his absence was run by the bartenders. One of them, Mathew McGrath, testi-

.fies that the money that was collected during these four days, which had been retained in the cash register, was turned over by him to "Miss McGovern." This witness gives the circumstances with very considerable detail, saying that he did not count the money, but "I [he] turned it over to Miss McGovern." The administratrix denies that she ever saw the till or register opened or knows anything about the money. Judging from her appearance and manner of testifying, I do not believe that she made any intentional misstatement on the stand. Indeed, I have discovered nothing that would lead me to believe that in her entire connection with her brother's property and estate she has been guilty of intentional untruth or misconduct. The fact that she had been legally delinquent has been due to her reliance upon bad advice. The present administratrix has an aunt of the same name as her own, and it is entirely possible that, if the statement of the witness McGrath is true, the "Miss McGovern" to whom he delivered the money was not the administratrix, but her aunt.

I, accordingly, find that Margaret McGovern, the administratrix, did not personally receive the money taken from the cash register. She does not, however, say that she took any steps, before or after her appointment as administratrix, to ascertain what had become of such money, or to recover from anybody who had misappropriated or purloined it. I find that the receipts of the barroom averaged $50 a day, and that the amount that had accumulated during the four days of John McGovern's sickness was $200, and that the administratrix is chargeable with that amount because of her neglect to recover it from such person or persons as did receive it.

It further appears that the decedent owned a safe, the value of which at the time of his death I find to have been $25, and the administratrix is chargeable also with that amount in her account.

Ivins, Mason, Wolf & Hoguet (W. L. Ransom, of counsel), for administratrix.

David McClure (Arthur J. McClure, of counsel), for Metropolitan Surety Co., the surety of the administratrix.

Hyman & Campbell (Allan R. Campbell, of counsel), for Strauss, Pritz & Co., contesting creditors.

Guggenheimer, Untermyer & Marshall (Charles Guggenheimer, of counsel), for Flanagan, Nay & Co., contesting creditors.

Henry J. Underlitz, for Bernheim Distilling Co., contesting creditor.

William T. Carlisle, for James McGovern and other next of kin.

THOMAS, S. No copy of the chattel mortgage dated August 26, 1903, executed by the intestate, having been filed, as required by law, the chattel mortgage was void as against the administratrix in so far as she represented the creditors of the deceased, although it was valid as against his next of kin. The administratrix will be surcharged with the sum of $2,200 as the value of the personal property sold under the chattel mortgage, which it was her duty to contest for the preservation of the estate. The rental value of the premises occupied by the deceased at the date of his death was $1,800, and no more. The referee has no power to pass upon the question of allowances, costs, and taxable disbursements, and to that extent the exception to conclusion of law No. 20 is sustained.

Except as modified, referee's report is confirmed, and the exceptions thereto overruled.