WILMINGTON TRUST COMPANY, Administrator of Charles E. Van Ostrand, deceased, appellant, *v.* DAISY L. BALDWIN, appellee.

In the matter of the Estate of CHARLES E. VAN OSTRAND, deceased.

598

*(November* 1, 1937.)

RODNEY and SPEAKMAN, J. J., sitting.

*Richards, Layton and Finger* for Wilmington Trust Company, Administrator, appellant.

*Albert L. Simon* for Grover C. Foglesong, appellant.

*Hugh M. Morris* and *G. B. Pearson, Jr.,* for Daisy L. Baldwin, appellee.

Superior Court for New Castle County, No. 187, November Term, 1936.

RODNEY, J., delivering the opinion of the Court:

1. Is the statute (*Section* 3867, *Revised Code* 1935) unconstitutional in that it purports to confer upon the Register of Wills a judicial power not authorized by the *Constitution?* The answer to the question is difficult and a satisfactory conclusion may only be reached at the expense of desirable brevity.

The only applicable provisions of the present *Constitution* (1897) are *Article* 4, §§ 33 and 34, as follows:

"*Section* 33. The Registers of Wills of the several counties shall respectively hold the Register's Court in each county. Upon the litigation of a cause the depositions of the witnesses examined shall be taken at large in writing and made part of the proceedings in the cause. This court may issue process throughout the State. Appeals may be taken from a Register's Court to the Superior Court, whose decision shall be final. In cases where a Register of Wills is interested in questions concerning the probate of wills, the granting of letters of administration or executors' or administrators' accounts, the cognizance thereof shall belong to the Orphans' Court, with an appeal to the Superior Court, whose decision shall be final.

"*Section* 34. An executor or administrator shall file every account with the Register of Wills for the county, who shall, as soon as conveniently may be, carefully examine the particulars with the proofs thereof, in the presence of such executor or administrator, and shall adjust and settle the same according to the right of the

matter and the law of the land; which account so settled shall remain in his office for inspection; and the executor, or administrator, shall within three months after such settlement give notice in writing to all persons entitled to shares of the estate, or to their guardians, respectively, if residing within the State, that the account is lodged in the said office for inspection.

"Exceptions may be made by persons concerned to both sides of every such account, either denying the justice of the allowances made to the accountant or alleging further charges against him; and the exception shall be heard in the Orphans' Court for the county; and thereupon the account shall be adjusted and settled according to the right of the matter and law of the land."

In no other section except the *Schedule* is there pertinent reference to the Register of Wills or of the Register's Court.

■ Detailed consideration of the foregoing sections will not be indulged in because the *Constitution* by *Section* 10 of the *Schedule* says "Unless otherwise provided, the Registers' Courts and the jurisdiction of the Justices of the Peace shall not be affected by this amended *Constitution*." This does not mean that a consideration of the Register's Court is to be made entirely exclusive of the *Constitution* of 1897, for such a construction would entirely nullify *Section* 33, as above quoted. It does mean that "unless otherwise provided" the Register's Court would remain as it theretofore had been. *Sections* 33 and 34 of *Article* 4 of the *Constitution* of 1897 are substantially the same, respectively, as *Sections* 22 and 21 of *Article* 6 of the *Constitution* of 1831. To that *Constitution* we then look. In addition to the sections just cited (*Art.* 6, §§ 21 and 22) we find *Section* 6 of the *Schedule,* as follows:

"*Sec.* 6. The registers' courts and justices of the peace shall not be affected by any amendments of the constitution made in this convention; but the said courts and the terms of office of registers and justices of the peace shall remain the same as if said amendments had not been made."

While the language of this section differs from the section in the *Schedule* of the *Constitution* of 1897, the effect, we think, is the same. The *Constitution* of 1897 was

largely (and expressly) an amendment of the *Constitution* of 1831, just as that in turn was an amendment of the ·*Constitution* of 1792. The provisions concerning the Register's Court and the passing of executors' and administrators' accounts before the Registers of Wills originated in the *Constitution* of 1792, and little change was made by the later *Constitutions* of 1831 and 1897. It is true that the *Constitution* of 1831 changed the name of the court to which appeals should be made from a Register's Court, but this was merely because of a change in the nomenclature of the courts. An amendment was made by the *Constitution* of 1831 concerning the hearing in the Orphans' Court of exceptions to an administrative account as passed before the Register of Wills. This, however, is not here material and the purpose of the amendment is set forth in *Harkers Debates of the Convention of* 1831, at *page* 229. The cited sections of the *Schedules* of the *Constitutions* of 1897 and 1831 tended to preserve the Register's Court as it appeared in the *Constitution* of 1792, to which our attention must be directed.

While the office of a constitutional schedule is to provide for a transition from an old to a new or amended Constitution and obviate inconveniences which might arise from the change of government, yet the schedule having been adopted as a part of the Constitution, its provisions are equally binding with it.

*Willis v. Kalmbach,* 109 *Va.* 475, 64 *S. E.* 342, 21 *L. R. A.* (*N. S.*) 1009.

Because the *Constitution* of 1792 (*Art.* 6, § 17) first created the Register's Court and provided for the passing of executors' and administrators' accounts before the Register of Wills, it would seem logical to inquire as to the situation just prior to the adoption of that Constitution, and of the changes made by it.

Disregarding the very early laws we find that in 1721 the Colonial Assembly passed two laws now found respectively in *Volume* 1, *Laws of Delaware, page* 87, and in *Appendix to Volume* 1, *page* 55. The effect of these laws was that letters of administration were granted by the Register of Wills and bond given; that settlements of administration accounts were made before the Orphans' Court, which court was charged with the duty "upon hearing and due consideration thereof to order and make just and equal distribution of what remaineth clear" [after the payment of debts] to the parties entitled. The same provisions were contained in the *Act of Nov.* 1, 1742 (*Volume* 1 *Appendix, page* 64) and the *Act* of 1751 (*Volume* 1, *page* 284). In 1773 (*Volume* 1, *page* 539) it was enacted that every executors' and administrators' account should be filed in the Orphans' Court for inspection for three months prior to its being settled. In 1787 (*Volume* 2, *page* 888) executors, for the first time, were required to give bond as well as administrators and, like administrators, to file their accounts in the Orphans' Court.

Under all of the acts hereinbefore mentioned the duties of the register were confined to the granting of letters of administration and taking the bond of the administrator, and to the probate of wills and the issuance of letters testamentary and to the filing of inventories. He had nothing whatever to do with any account of the personal representative, which accounts were passed before the Orphans' Court, which court had power to order a decree of distribution. Appeals from the action of the Orphans' Court were originally made to the Governor, in equity, but by the *Act* of 1773 (*Volume* 1, *page* 539) such appeals were made to the Supreme Court. The foregoing state of the law continued until the adoption of the *Constitution* of 1792.

In 1766 it was realized that no court had been em-

powered to hear appeals from the action of the registers (which seem then to have been confined to the probate of wills and the issuance of letters testamentary and letters of administration and the filing of inventories), and an entirely new court was set up to hear any such appeals. This court was styled the "Court of Delegates" (*Volume 1, page* 427). Chief Justice Read in a note in his compilation of *Delaware Laws* (now known as *Volumes* 1 and 2) says that no commission was ever issued under this act, but that these provisions were repealed and supplied by the provisions in the *Constitution* of 1792 creating the Register's Court with appeal to the Court of Law. See *Volume* 1, *page* 427.

This then brings us to the *Constitution* of 1792 and furnishes the first hint of the meaning of the Register's Court. The *Constitution* of 1792, by *Article* 6,$_0$§ 16, changed the place of filing and settling executors' and administrators' accounts from the Orphans' Court, and required that these accounts be filed with and settled and adjusted by the Register of Wills. The Constitution changed the provision that accounts must be filed three months before settlement and in its place required that the personal representative should notify the parties entitled to any share of the estate of the filing of the account within three months from the date of settlement.

The *Constitution* of 1792, by *Section* 17 of *Art.* 6, created the Register's Court in substantially the identical language found in our present *Constitution,* and which language has been continued in every revision since 1792. The term "Register's Court" was probably copied from the State of Pennsylvania, where it had appeared as a new term in their *Constitution* of 1790 (*Art.* 5, § 1). The Court was created by *Section* 17 and there is no additional provision regarding the jurisdiction of the court.

The appellant, Foglesong, argues that because no express jurisdiction is given to the Register's Court by the *Constitution* of 1792, and because there exists in no subsequent constitutional revision any language expressly allowing the Legislature to add to the jurisdiction of the Register's Court, as does occur with most other courts, that therefore the Legislature has no power to increase the jurisdiction of the Register's Court, or to charge it with additional judicial functions. We are, of course, aware of the general principle that in a constitutional form of government all three cardinal departments of government depend, for their powers, upon the organic law of the state as the common source of authority and that, generally, questions of jurisdiction must be determined by the *Constitution* (7 *R. C. L.* 1030). We are, however, loath to apply the principle in its entirety where the plan and scope of the *Constitution* was to create courts but not to define their jurisdiction except in a territorial sense. Our first *Constitution* of 1776 effected the transition from a colonial proprietory to an independent State and created courts, but in no instance did the *Constitution* define the jurisdiction of the courts. The *Constitution* of 1792, in addition to the creation of the Register's Court, made radical changes in the judicial system. It abolished purely county courts and, for the first time, created *nisi prius* courts of state wide character and ambulatory nature. With the exception of the Court of Chancery no material mention is made in the *Constitution* of the jurisdiction of any court. The Legislature repeatedly vested by statute certain jurisdiction in the courts created by the *Constitution* of 1792. A single instance may be cited. By the *Act of Feb.* 1, 1806 (*Volume 4, page* 32) the Register's Court was given additional power with reference to the filing of inventories and the register was given power to "force obedience to his warrants, sentences, orders and decrees, concerning any matter

cognizable before him, by imprisonment of the body or sequestration of lands or goods as fully as any Court of Equity may or can do."

Notwithstanding the lack of jurisdiction regarding the Register's Court expressly set out in any Constitution the existence of such court and its jurisdiction has been often recognized.

The Register's Court was a new creation in 1792. Unless we can read into the Constitution the thought that such court was invested with the powers theretofore exercised by the Register of Wills, or unless additional powers could be granted by the Legislature, then no power or authority at any time ever existed in the Register's Court, notwithstanding the provision for the court in every Constitution. If we look alone to the *Constitution* of 1776 and 1792 for the jurisdiction of any law court we find no jurisdiction whatever, and we would be forced to conclude that from 1776 to 1831 no law court in Delaware was vested with any jurisdiction whatever. And this for the first 56 years of our state's existence. The statement of such a proposition is its own refutation.

We are of the opinion that it was the plan and scope of every constitutional revision that the Register's Court could be given jurisdiction by the Legislature and that this jurisdiction may now be given in any appropriate and germane particular. As said in *Harris v. Vanderveer's Ex'r*, 21 *N. J. Eq.* 424, 429:

"In the judicial system of a state, few things can be imagined more obstructive of the progress of society than courts with jurisdictions absolutely fixed."

Whether such additional jurisdiction can be given in derogation of a constitutional jurisdiction of another court is a different question and whether the Statute in the present instance is a proper exercise of the legislative power must now be considered.

2. Assuming then that the Legislature has the power to add to the jurisdiction of the Register's Court, is the statute of distribution here involved a lawful exercise of that power?

The answer to this question brings us directly to a consideration of *Robinson v. Robinson's Adm'r,* 3 *Harr.* 433, decided in 1842. That case, as we read it, distinctly held that the Register of Wills occupies a dual position; that under *Article* 6, § 17 of *Constitution* of 1792 [*Article* 6, § 22 of *Const.* of 1831 and *Article* 4; § 33 of *Const.* of 1897] the Register of Wills for certain purposes is a judge and constitutes the Register's Court; that in adjusting and settling executors' or administrators' accounts under *Article* 6, § 16 of *Constitution* of 1792 [*Article* 6, § 21 of *Constitution* of 1831, and *Article* 4, § 34 of *Constitution* of 1897] the Register of Wills is not a judge but an accounting officer from whose allowances exceptions may be taken to the Orphans' Court. With the opinion of the *Robinson Case* we are strictly bound. It was the opinion of the Court of Errors and Appeals, the highest Court of the state, and concurred in by the Chancellor and every law judge of the state having been heard on question reserved by the County Court.

Apply then the opinion to the present case. The administration account has been filed by the administrator and adjusted and settled by the register. This settlement by the *Robinson Case* was the act of an accounting officer and not a judicial function. Can the Legislature using the ministerial act of settling the account as a basis, superimpose upon it the judicial function in the Register's Court of the distribution of the estate as shown by the account?

We cannot say that, under certain circumstances, this cannot be done. We can but point out some of the inherent and serious difficulties which, in some cases, may present themselves.

The statute does not profess merely to determine who may be entitled to the residue of the estate as shown by the account. Other provisions of law did that. The statute clothes the register with power to determine the amount or interest in the estate as shown by the account which may be distributed to each of the persons entitled. Under the statute a decree for distribution may be made immediately after the adjustment and settlement of the account, and if no appeal from the decree of distribution is made within two months the decree becomes final and conclusive upon all persons but creditors. But what about exceptions to the account? Since 1825 and until 1933 there has been statutory provision (now found as *Section* 5150 of the *Revised Code* of 1935) allowing exceptions to an executors' or administrators' account to be taken within three years from the settlement of the account. In *Allen v. Leach,* 7 *Del. Ch.* 83, 29 *A.* 1050, it was held that this statute of limitations did not begin to run until the personal representative had within three months from the filing of the account given to the parties entitled due notice of such filing as required by the Constitution.

It is a curious coincidence that on the very day of approval of the act authorizing the decree of distribution (*Chapter* 184, *Vol.* 38, approved April 6, 1933), there was enacted an amendment of the law concerning exceptions to the account. By *Chapter* 188, *Vol.* 38 (also approved April 6, 1933) it was enacted that if the personal representative had, within three months, given notice of the settlement of the account (being the constitutional requirement), that exceptions were required to be filed within three months after the giving of such notice. This, then, in certain circumstances provides for exceptions within six months from the filing of the account. If the decree of distribution, if not appealed from becomes, by the term of the statute final and conclusive at the end of two months,

and thus puts finality to the account, it is difficult to see what has become of the right of exceptions to the account. It would be difficult to sustain a statute which abrogates an administrator's constitutional right and duty to give a notice, which notice is a basic matter leading to exoneration of liability on his bond, and the only way by which complete exoneration may be obtained unless, indeed, the decree of distribution operates as an amendment to the right of exceptions, which has not been suggested.

The account filed by the personal representative is his own account. There is included therein only such debit items as the representative chooses to include. The register may require vouchers as evidence of credits claimed by the representative, but cannot be expected to know of items with which the representative should be chargeable. The right of exception after notice of filing the account is, therefore, of importance, and it was for this express purpose that the *Constitution* of 1831 changed the then existing provisions by allowing exceptions "to both sides of the account," whereby the representative could be charged in the Orphans' Court with omitted items of debit as well as denied certain items of credit claimed by him, and allowed by the register.

It will be noted that the court in the consideration of the second point has not determined the question of the validity of the present decree of distribution on the ground that the statute purporting to authorize the decree was or was not a lawful and valid exercise of the power existing in the Legislature. In view of our conclusion on the third point this may be unnecessary. On the second point we have contented ourselves with an expression of some thoughts which, when accompanied by appropriate facts, might render impossible the sustaining of the act.

But the statute authorizing decrees of distribution is

also attacked because of alleged defects inherent in the statute itself, and this brings us to the third point.

3. Is the statute unconstitutional because it fails to provide any notice to interested parties, or opportunity to be heard prior to the entry of the decree of distribution?

It is readily conceded by the appellee that under the "due process" clause of the *Federal Constitution* (*Amend.* 14) some notice must be given to interested parties and that actual notice is not sufficient to satisfy the constitutional requirement unless such notice is required by law. The statement of that principle needs no citation of authorities to support it. The Chancellor of this state in *Cantor v. Sachs*, 18 *Del. Ch.* 359, 373, 162 *A.* 73, 79, said:

"Since *Wuchter v. Pizzutti*, 276 *U. S.* 13, 24, 48 *S. Ct.* 259, 72 *L. Ed.* 446, 57 *A. L. R.* 1230, no argument is needed to show that whenever notice of proceedings under a statute is required by due process of law to be given to a defendant, the statute itself must direct it. It will not satisfy the requirements if notice be actually given, if it be gratuitous. Notice cannot depend upon the favor of the court."

As was said in *Spoturno v Woods*, 8 *W. W. Harr.* (38 *Del.*) 378, 192 *A.* 689, 694,

"Due process of law, as applied to proceedings under a statute resulting in judgment, means notice directed by the statute itself, and not a voluntary or gratuitous notice resting in favor or discretion."

The appellee, however, insists that parties interested were furnished with three several notices, any one of which was sufficient to meet the constitutional requirement. The suggested notices will be considered *seriatim* in the order presented.

(a) Notice of grant of original letters of administration which it is claimed inheres and applies to the estate until its final disposition.

(b) Notice provided by Rule adopted by the Register of Wills.

(c) Notice required by the distribution statute to be given after the making of the decree and before it becomes final.

■ (a) The appellee insists that the notice of the grant of original letters of administration obtainable under *Section* 3861, *Revised Code* of 1935, is sufficient for all purposes of the settlement of a decedent's estate. In support of this many cases are cited. We shall not pause to discuss these cases, but the language of some is inappropriate in view of our decision of *Robinson v. Robinson's Adm'r,* 3 *Harr.* 433. It is sufficient for us to quote the statute relied on. This statute provides: "The Register may and on application shall" make an order directing the giving of notice of the granting of letters of administration. There is no requirement of notice here. It may or may not be made dependent upon the will of the representative or of the register. Because the notice is not required to be given in every case but is given only at the option of the personal representative or the Register of Wills, we classify it as a gratuitous or voluntary notice to be given at will. As such it is clearly insufficient in the present matter within the cases of *Cantor v. Sachs* and *Spoturno v. Woods, supra*.

■ (b) Is the rule adopted by the Register of Wills sufficient to meet the constitutional requirements?

We readily concede the rule making power of courts both under statutes and as an inherent attribute of the court itself. Usually this power applies to matters of procedure and of practice. No case has been cited where jurisdiction has been acquired by rule of court. If the jurisdiction of the register did not exist without the rule and did exist after the passage of the rule, then it would seem that jurisdiction, in large part, came from the rule itself. If the rule be rescinded the jurisdiction would then cease, perhaps, to be resurrected upon the adoption of a new rule.

We think that notice or process of some kind is a fundamental right and jurisdictional in nature, and is not a mere matter of practice to be regulated by rule where the court has not common law jurisdiction. If we examine the territorial scope of the act, we arrive at the same conclusion. The act purports to grant jurisdiction in every county of the state. So far as we know the rule has been adopted solely by the register of New Castle County. If the validity of the statute depends upon the rule then the statute is in force in New Castle County and invalid elsewhere. If an act purported to vest a jurisdiction in a justice of the peace, with no provision for notice to a party, and one justice provided for notice by rule, it would be impossible to sustain the act as to such justice because of his rule, and to consider the act invalid as to every other justice.

Attention might be directed to those cases in which the Register of Wills has an interest. In such cases the statute prescribes that the decree of distribution be made by the Orphans' Court. It could hardly be suggested that in such cases a rule of the Register of Wills would provide the necessary notice.

In line with *Cantor v. Sachs, supra,* we hold that the rule adopted by the register does not provide the notice required by the Constitution and lacking in the statute itself. As said in *Stuart v. Palmer,* 74 *N. Y.* 183, 30 *Am. Rep.* 289,

"The constitutional validity of law is to be tested, not by what has been done under it, but by what may, by its authority be done."

(c) Is the notice required to be given by the distribution statute after the making of the decree and before it becomes final, a sufficient notice under the law?

This court has had the advantage of elaborate arguments on the question as to whether on an appeal from a decree of distribution the hearing is upon the record as

established before the register, or whether the hearing is *de novo* in this court. If the hearing in this court is upon the record established below then only those parties are in this court who by process or appearance were in the court below, or had an opportunity of so being. At least only those parties are in this court as a matter of right as distinguished from an act of grace. Considerable attention was given in the briefs to a consideration of the provisions in the statute regarding the right of appeal and the meaning of such term as there used. We think we are not concerned with that expression in the statute. If there be a right of appeal to the Superior Court it is because the action of the register is a judicial action taken in his capacity as judge of the Register's Court. If such be the case then the appeal lies by virtue of the constitutional provisions governing all appeals from the Register's Court and to the Constitution we must look and to the decisions construing it. We find that in the Register's Court,

"Upon the litigation of a cause the depositions of the witnesses examined shall be taken at large in writing and made a part of the proceedings in the cause."

By "depositions of the witnesses" we assume is meant their testimony. If the hearing on appeal is *de novo* we can see no purpose in the preservation of the testimony. The language to us indicates the intention to formulate a record upon which the case should finally be determined by the Superior Court on appeal. In *Barker v. Spicer, 4 Harr.* 348, the court in speaking of appellate proceedings in the Superior Court from a judgment of the Register's Court says:

"The cause is tried on appeal on the same evidence as was heard in the court below."

In *Cummins v. Cummins, 1 Marv.* 423, 31 *A.* 816, Chief Justice Lore was of the opinion that appeals were heard upon the record of the Register's Court, and Judge Grubb

expressed the view that such hearings were had *de novo*. It is quite possible that both expressions were obiter since the appeal contained two grounds and it was said that the main reliance was on the second ground, which was that the Register refused to grant an issue of *devisavit vel non* to be tried before a jury. On this question both the foregoing judges agreed and the register's order was affirmed. The matter was determined upon the evidence sent up from the register. Judge Cullen concurred in the result but delivered no opinion. Every discussion of additional evidence in appeals from a Register's Court has been with reference to an issue tried before a jury. No case has been found which indicates that in a hearing before the court the trial is *de novo* and not upon the record as sent up by the register.

Great care must be exercised in determining the meaning of the term *"de novo"* in cases involving appellate proceedings. The usual signification includes a complete retrial in which new evidence may be introduced and an entire opening of the case. In this sense the term has been used in this opinion. Our own Supreme Court, however, in *Godwin v. State*, 1 *Boyce* (24 *Del.*) 173, 74 *A.* 1101, *Ann. Cas.* 1913 *E*, 940, uses the term in a different sense. There the Supreme Court was restricted by the Constitution in the hearing on appeal to a consideration of the evidence adduced in the court below, yet the Supreme Court said:

"By this appeal the cause was heard *de novo* on the testimony and proofs taken."

It is a well settled rule that in appellate proceedings the cases are not tried *de novo* in the sense such term is here considered, unless the law directs or permits such a course. 4 *C. J.* 726; 3 *Am. Jur.* 377.

The Constiution not only does not direct a trial *de novo* in the present case but the plain intendment, we think, is to the contrary. In almost every other appellate pro-

ceeding in Delaware where it seems contemplated that the case shall be tried anew the statutes expressly authorize it.

We conclude, therefore, that in an appeal from a decree of distribution '(if such decrees could be legally entered and appeal made therefrom) the Superior Court would act upon the record as sent up from the Register of Wills. We are not greatly impressed with the argument that the hearing in the Superior Court should be considered *de novo* in nature because the decree of distribution may be granted on an *ex parte* application and there may be no record or even parties in the proceedings before the register. Such a situation simply shows the invalidity of the proceedings under the statute, by which it is proposed to finally determine property rights.

It is a principle that lies at the foundation of all jurisprudence in civilized countries that a person must have the opportunity of being heard before a court can deprive him of his rights. 21 *R. C. L.* 1262.

A notice after judgment even with the right of appeal is not equivalent to à notice before judgment where the appeal is not *de novo* but is heard on the record of the court below. The burden has shifted and the appellant must sustain the burden. In an appeal to the Superior Court, as the present, if two judges are sitting the appellant must obtain the concurrence of both.

We fully recognize that the constitutionality of the distribution statute must and should be sustained unless the contrary is clearly established. We also fully appreciate the desirability of decrees of distribution when properly and legally obtained. We are, however, for the reasons set forth in this opinion, constrained to reverse the judgment of the Register of Wills and set aside the decree of distribution.