In the Matter of the Estate of DONALD G. MORROW, Deceased.

*(April* 4, 1966)

McNeilley, J. sitting

*William Poole,* and *Robert K. Payson,* of Berl, Potter & Anderson, for petitioner-exceptant.

*Clarence W. Taylor,* of Hastings, Taylor & Willard, amicus curiae.

Orphans Court for New Castle County.

McNEILLY, Judge.

This is an appeal from a determination of the Register of Wills of New Castle County with respect to the First and Final Account filed with said Register by Ruth N. Morrow, Executix and sole beneficiary under the Will of her deceased husband, Donald G. Morrow. It requires an interpretation of the power or authority of the Register on an accounting by an Executor to disallow the deduction of the payment in full of a debt which was owed by decedent and his wife at the time of his death as co-obligors.

An Order dated February 28, 1966 was filed by this Court on March 1, 1966 indicating that the Register had no power or authority to disallow such a debt, and this Opinion is written for the

purpose of setting forth the reasons for that Order.

On June 27, 1950, decedent and his wife, Ruth N. Morrow, purchased a home in New Castle County, State of Delaware, as tenants by the entrieties. At the same time they executed a Mortgage which was recorded as a lien against subject property and gave their bond as security therefore. Under the terms of this bond, they become jointly and severally liable for the full amount of the indebtedness.

On February 19, 1964 the husband, Donald G. Morrow, died and his Will was probated in the Office of the Register of Wills in and for New Castle County on February 24, 1964. Under the terms of said Will, Ruth N. Morrow, the surviving spouse, was sole beneficiary and was appointed Executrix.

On July 9, 1964 the Executrix filed with the Register an inventory and appraisement of the assets and liabilities of the Estate. As an asset the entire appraised market value of the real estate was listed, and as a debt the entire balance due on the bond and mortgage was listed. The amount of this indebtedness subsequently was paid by the Executrix and was claimed as an allowance in the First and Final Account filed by her on February 23, 1965.

On March 1, 1965 the Register addressed a letter to the Executrix which reads as follows:

"This office will not approve the First and Final Settlement which you have submitted on the estate of Donald G. Morrow, deceased.

It is the policy of this office, as established by myself, as Register of Wills for New Castle County, to allow as a debt of the deceased only one-half of the balance of any mortgage owed on property held by the deceased and a surviving spouse as tenants by the entirety.

Therefore, before the account can be approved by this office,

you must reduce the amount of the mortgage for which you crave allowance by one-half, and the amount of such reduction must be reflected by an increase in the closing costs which are due this office."

It is from this disallowance by the Register of the full payment of the debt made by the Executrix that this appeal is before the Court.

There is no dispute that the balance due on the bond and mortgage in this case was a valid and enforceable debt against the estate. The Supreme Court of Delaware has held unequivocally that the estate of a deceased joint debtor is liable for the entire debt. In *Keil v. Keil* (1958) 1 Storey 351, 145 A.2d 563, 76 A.L.R.2d 996, Chief Justice Southerland said in his Opinion:

"A joint and several obligation of two parties, whether or not husband and wife, creates an obligation which is, on its face, for the benefit of both. Upon the death of one party his estate is still liable for the debt."

The Register concedes this but in support of his position in allowing no more than one-half of the amount owed and paid as a deduction from the gross estate he relies upon the following language of Chief Justice Southerland in the same case:

"The question is this: If husband and wife jointly incur an indebtedness secured by a mortgage on property held as tenants by the entireties, and one spouse dies, is the estate of the decedent liable to contribute to the survivor one-half of the common debt? * * * And if the right of contribution, upon payment of the debt during the lifetime of both, is an attribute of the joint liability, we fail to see why it does not exist upon payment made after the death of one. The payment of the debt by the survivor is certainly a benefit to the estate because it discharges a liability of the estate. This is true whether or not there is any collateral in the hands of the creditor. Certainly if there were no collateral contribution would be allowed. And what of the case

in which one obligor has pledged his own collaternal for a joint debt? Unless his co-obligor is a mere accomodation maker, it is held that he is entitled to contribution. *Commerce Union Bank v. Weis,* 27 Tenn.App. 433, 181 S.W.2d 764. In such a case the co-obligor has no interest in the property—the collateral—but must contribute if the other obligor discharges the common liability.

\* \* \* \* \* \*

A joint and several obligation under our law may be enforced by the creditor against both or either; but as between obligors each of them, in the ordinary case, is liable for one-half the debt.

In our opinion, a common interest in the land or property mortgaged or pledged for a joint debt is not the element that controls the right to contribution. The liability to contribution flows directly from the debt, and the mortgage is only the security for the debt."

It is the contention of the Register that since the right of contribution exists it is an asset of the estate which an executor or administrator is bound to report and account for and for which the Register has the power, jurisdiction and duty to require an adjustment in the executor or administrator's account. I cannot agree, and in reaching this conclusion I am doing so entirely upon my interpretation of the powers and authority of the Register without any consideration being given to the question of contribution and the persons or parties who might be entitled to enforce or consider same.

Sections 31 and 32 of Art.IV of the Delaware Constitution of 1897, *Del.C.*Ann. as amended are as follows:

"Section 31. The Registers of Wills of the several counties shall respectively hold the Register's Court in each County. Upon the litigation of a cause the depositions of the witnesses examined shall be taken at large in writing and made part of the proceedings in the cause. This court may issue process throughout the State. Appeals may be taken from a Register's Court to the Orphans' Court. In cases where a

Register of Wills is interested in questions concerning the probate of Wills, the granting of letters of administration, or executors' or administrators' accounts, the cognizance thereof shall belong to the Orphans' Court".

"Section 32. An executor or administrator shall file every account with the Register of Wills for the County, who shall, as soon as conveniently may be, carefully examine the particulars with the proof thereof, in the presence of such executor or administrator, and shall adjust and settle the same according to the right of the matter and the law of the land; which account so settled shall remain in his office for inspection; and the executor, or administrator, shall within three (3) months after such settlement give notice in writing to all persons entitled to shares of the estate, or to their guardians, respectively, if residing within the State, that the account is lodged in the said office for inspection.

"Expections may be made by persons concerned to both sides of every such account, either denying the justice of the allowances made to the accountant or alleging further charges against him; and the exceptions shall be heard in the Orphans' Court for the County; and thereupon the account shall be adjusted and settled according to the right of the matter and the law of the land.

"The General Assembly shall have power to transfer to the Orphans' Court all or a part of the jurisdiction by this Constitution vested in the Register of Wills and to vest in the Orphans' Court all or a part of such jurisdiction."

This language is substantially the same as the language in the Constitution of 1792 and all subsequent Constitutions of this State.

Surprisingly little material can be found in the cases, statutes or reference works which throw any light upon the exact nature of the office or the Register of Wills and the jurisdiction of the Register's Court. Even the historical approach does not give us a complete and full

story of the creation of the office of the Register and his function and jurisdiction. Prior to 1704 the counties of "New Castle, Kent and Sussex upon Delaware" were known as the territories of the Province of Pennsylvania (Woolley, Delaware Practice, Vol. 1, Sec. 2, P.2.) We must, therefore, look to the early Organic Laws of Pennsylvania to see if we can ascertain the nature of the office of the Register of Wills. Penn's Charter of Liberties, 1682, was followed by the Frame of Government of Pennsylvania, 1682, and the Laws Agreed Upon in England in 1682. Item XXII of the Laws Agreed Upon in England dated May 5, 1682 provides "That there shall be a Register for births, marriages, burials, wills and letters of administration distinct from the other registry". This is the first reference which can be found to an office for the registering of wills and testaments.

Judge Rodney's opinion in *Wilmington Trust Co. v. Baldwin* (1937) 8 W.W.Harr. 595, 195 A. 287, traces the history of the office of Register of Wills from this point as follows:

"Because the Constitution of 1792 (art. 6, Sec. 17) first created the Register's Court and provided for the passing of executors' and administrators' accounts before the Register of Wills, it would seem logical to inquire as to the situation just prior to the adoption of that Consititution, and of the changes made by it.

Disregarding the very early laws we find that in 1721 the Colonial Assembly passed two laws now found respectively in Volume 1, Laws of Delaware, page 87, and in Appendix to volume 1, page 55. The effect of these laws was that letters of administration were granted by the Register of Wills and bond given; that settlements of administration accounts were made before the Orphans' Court, which court was charged with the duty 'upon hearing and due consideration thereof to order and make just and equal distribution of what remaineth clear' (after the payment of debts) to the parties entitled. The same provisions were contained in the Act of Nov. 1, 1742 (volume 1 Appendix, page 64), and the Act of 1751 (volume 1, page 284). In 1773 (volume 1, page 539) it was enacted that every executors' and administrators' account should be filed in the Orphans' Court for

inspection for three months prior to its being settled. In 1787 (volume 2, page 888) executors, for the first time, were required to give bond as well as administrators and, like administrators, to file their accounts in the Orphans' Court.

Under all of the acts hereinbefore mentioned the duties of the register were confined to the granting of letters of administration and taking the bond of the administrator, and to the probate of wills and the issuance of letters testamentary and to the filing of inventories. He had nothing whatever to do with any account of the personal representative, which accounts were passed before the Orphans' Court which court had power to order a decree of distribution. Appeals from the action of the Orphans' Court were originally made to the Governor, in equity, but by the Act of 1773 (volume 1, page 539) such appeals were made to the Supreme Court. The foregoing state of the law continued until the adoption of the Constitution of 1792.

In 1766 it was realized that no court had been empowered to hear appeals from the action of the registers (which seem then to have been confined to the probate of wills and the issuance of letters testamentary and letters of administration and the filing of inventories), and an entirely new court was set up to hear any such appeals. This court was styled the 'Court of Delegates' (volume 1, page 427). Chief Justice Read in a note in his compilation of Delaware Laws (now known as volumes 1 and 2) says that no commission was ever issued under this act, but that these provisions were repealed and supplied by the provisions in the Constitution of 1792 creating the Register's Court which appeal to the Court of Law. See volume 1, page 427.

This then brings us to the Constitution of 1792 and furnishes the first hint of the meaning of the Register's Court.*

---

*Article VI of the Delaware Constitution of 1792 is the judiciary article of that constitution and Sec. 1 thereof is as follows:

"The judicial power of this State shall be vested in a court of chancery, a supreme court, and courts of oyer and terminer and general gaol delivery, in a court of common pleas, and in an orphans' court, register's court, and a court of quarter sessions of the peace for each county, in justices of the peace, and in such other courts as the legislature, two-thirds of all the members of each branch concurring, may, from time to time, establish". Vol. 1, Del. Laws XXIX".

The Constitution of 1792, by section 17 Sec. 16, changed the place of filing and settling executors' and administrators' accounts from the Orphans' Court, and required that these accounts be filed with and settled and adjusted by the Register of Wills. The Constitution changed the provision that accounts must be filed three months before settlement and in its place required that the personal representative should notify the parties entitled to any share of the estate of the filing of the account within three months from the date of settlement.

The Constitution of 1792, by Article 6, of art. 6* created the Register's Court in substantially the identical language found in our present Constitution, and which language has been continued in every revision since 1792. The term 'Register's Court' was probably copied from the State of Pennsylvania, where it had appeared as a new term in their Constitution of 1790 (art. 5 Sec. 1). The Court was created by section 17 and there is no additional provision regarding the jurisdiction of the court".

A search of the Colonial laws of New Castle, Kent and Sussex reveals several references to the Register of Wills but nowhere is there any definition of description of his function or duties other than that to be inferred from the statutes referred to by Judge Rodney in the *Baldwin* case. Article 12 of the Constitution of Delaware 1776. (1 *Del.C.* p. 88) which is not discussed by Judge Rodney in the *Baldwin* case, provides in part:

"The president and privy council shall appoint the secretary, the attorney-general, *registers for the probate of wills and granting letters of administration* * * * who shall be commissioned as aforesaid." (Emphasis supplied)

No other mention of the Register is made in this Constitution of 1776, but it should be noted that the title given to the Register is probably descriptive of his function and duties as described by Judge Rodney.

Some assistance in determining the scope of authority and

jurisdiction of the Register of Wills can be obtained by examining the parallel provisions of the Pennsylvania Constitution of 1790. (Vol. 5 American Charters, Constitutions and Organic Laws 1492–1908 by Thorpe p. 3092 et seq.) The judiciary article of the Pennsylvania Constitution of 1790 as found in Article V, Section 1, of this Article is as follows:

"The judicial power of this commonwealth shall be vested in a supreme court, in courts of oyer terminer and general jail delivery, in the court of common pleas, orphans' court, register's court, and a court of quarter sessions of the peace for each county, in justices of the peace, and in such other courts as the legislature may, from time to time, establish."

It will be noted that except for a separate Court of Chancery in Delaware, the systems of courts in the two States under the early Constitutions are practically identical. However, it is interesting to note that Section 11 of the Pennsylvania Constitution of 1790 defines the office of Register of Wills more fully than does the Delaware Constitution of 1792. Section 11 of Article V of the Pennsylvania Constitution of 1790 provides:

"A register's office for the probate of wills and granting letters of administration, and an office for the recording of deeds, shall be kept in each county."

The same phraseology is contained in Section 11 of Article V of the Pennsylvania Constitution of 1790 as is found in the William Penn Laws Agreed Upon in England in 1682. In view of this similarity it is reasonably clear in the absence of evidence to the contrary that the Register of Wills provided for in the Pennsylvania Constitution of 1790 and the Register of Wills provided for in the Delaware Constitution of 1792 are the counterpart of the office of Register "for births, marriages, burials, wills and those of administration" provided for in the William Penn Laws of 1682.

The reason for emphasizing this similarity is that in

Pennsylvania, both before and after the Charter of Seperation in 1701, the sole jurisdiction of the Register was that of probating wills and granting letters. Nowhere is there any indication that the Register of Wills has any general authority or jurisdiction over the administration of decedents' estates. Since the origin of the office of Register of Wills in Delaware undoubtedly dates back to the Penn Laws of 1682 it is difficult to imagine the Resister in Delaware having any greater jurisdiction than that of the Register in Pennsylvania prior to the separation of the Colonies unless such jurisdiction has been specifically conferred by statute.

The Pennsylvania Courts have clearly defined the jurisdiction of the Register of Wills in a number of cases. In the case of *In re Rockett's Estate* (1944) 348 Pa. 445, 35 A.2d 303 at 304, the Supreme Court of Pennsylvania said:

In this Commonwealth the line of demarcation between matters of probate and of distribution or construction is distinct and definite. In this connection, it was said by this Court, in *Carson's Estate*, 241 Pa 117, 121, 88 A. 311, 312: "The probate of a will without regard to its provisions is one thing; distribution of the estate of the testator in accordance with its terms is another. The former is for the register; the latter is none of his concern.' It is clear that the issue here, i.e. whether or not clause (a) formed a part of testator's will, is one of probate, rather than of construction or distribution."

The Supreme Court of Pennsylvania in the case of In re Carson's Estate (1913) 241 Pa. 117, 88 a. 311, in discussing some of the earlier Pennsylvania cases said:

"* * * (quoting from Hegarty's Appeal, 75 Pa. 503) * * *

'But it certainly does not follow from this that his jurisdiction extends to deciding upon the validity of any disposition upon any other ground than that it is not in truth the voluntary act of the testator, even though such validity may depend upon some extraneous matter of fact.

In Baxter's Appeal, 1 Brewst. 451, 460, it was said, in the opnion of this court, that, 'though a writing propounded as a will may contain one or more dispositions of property unlawful or void for any reason, it by no means follows that it is not to be admitted to probate. It may contain other useful provisions not at all affected by the cause of the alleged invalidity'. * * * Professional opinion sustains the view that the jurisdiction of the register in the probate of wills is confined to the question whether the paper has been properly executed according to law and is in point of fact the will of the alleged testator, leaving all other questions to subsequent decision if they should afterwards arise. We consider this doctrine as most in accordance with general principles as well as the provisions of our statutory system.' "

An examination of the Delaware Statutes governing the jurisdiction, power and authority of the Register of Wills also drive us to the conclusion that the Register of Wills does not have any general jurisdiction over the administration of decedents' estates. Title 12 *Del.C.* Chapters 13–25 inclusive contain the present laws governing the settlement of personal estates and the duties of the Register of Wills. 12 *Del.C.* Chapter 13 specifically gives the Register authority to probate wills and to hear caveats and petitions for review. 12 *Del.C.* Chapter 15 specifically gives the Register the authority and power to grant letters testamentary and of administration, to remove executors or administrators for neglect of duty, to require the giving of bond and to perform certain other miscellaneous functions which are designated in said Chapter. 12 *Del.C.* Chapters 19, 21 and 23 deal with the function of the Register as an accounting officer in the receiving of inventories and accounts. It is significant that in connection with the jurisdiction exercised by the Register in the probating of wills and granting of letters under 12 *Del.C.* Chapters 13 and 15, appeal lies to the Superior Court, While in respect to all other functions of the Register enumerated in succeeding Chapters 19, 21 and 23, the appeal lies to the Orphans' Court. Thus, when acting in a judicial capacity appeal from the Register will lie to the Superior Court, while the action of the Register as an accounting officer is subject to review in the Orphans' Court.

Judge Woolley (Delaware Practice, Vol. 1, Secs. 84–85,) apparently believed that the Register had very limited jurisdiction in matters of probate. He says, (at page 50):

"IX. REGISTER OF WILLS. Sec. 84. A portion of the judicial power of the State is vested in Register's Courts. A register's court is a court which has jurisdiction in matters of probate. This court is presided over by a Register of Wills, who is a county officer chosen at general elections by the qualified electors of the county in which this court is situated, to serve for a term of four years. * * *

Sec. 85. Jurisdiction of Register's Courts. All wills shall be proved before the register of the county in which the testators resided at the time of death. If a testator did not reside in the State, his will may be proved before the register of any county wherein are any goods or chattels, rights or credits, or lands, or tenements of the deceased.

The register has power to order any issue of fact whereof he may prescribe the form, touching an instrument purporting to be a will, to be tried by a jury in the Superior Court.

A will being allowed, the register may grant letters testamentary to the executor thereof, and qualify him for the performance of his duties.

In case of intestacy, administration of the goods and chattels, rights and credits of an intestate, is granted by the register of the county in which the intestate resided at the time of his death, and if the intestate did not reside in the State, then administration may be granted by the register of the county wherein the intestate had any estate, personal or real."

Judge Woolley then described the function of the Register as an accounting officer. These functions are the ones now prescribed in Article IV, Sec. 32 of the Constitution and in 12 *Del.C.* Chapters 19, 21 and 23 enacted pursuant thereto.

There are very few Delaware cases that give much consideration to the jurisdiction of the Register of Wills or his function. In the case of *Robinson v. Robinson* (1842) 3 Harr. 433, the Court of Errors and Appeals considered the duties of the Register in respect to the filing of accounts of personal representatives. In this case for the first time the Court drew the distinction between the duties of the Register as an accounting officer and his functions as a judge in the Register's Court. Justice Harrington speaking for the Court said at page 437:

"The constitution makes a manifest distinction between the duties of the register as an accounting officer and his functions as a Judge sitting in the register's court. Section 21 of article 6, *regards him as an auditor to examine, adjust and settle administration accounts, and gives an appeal from this settlement to the Orphans' Court, where alone these accounts can be questioned.* Section 22 considers him for certain purposes as a judge, and authorizes him to hold a court. It makes provision for the 'litigation of causes,' and requires depositions to be taken as a part of the 'proceedings in the cause'. It contemplates parties litigant and adversary proceedings, neither of which is contemplated or practically observed as to the matters referred to in section 21. From this court the appeal is to the Superior Court." (Emphasis supplied)

Subsequently, this same problem was considered by the Superior Court in the case of *Wilmington Trust Co. v. Baldwin,* supra. In this case the Court had before it the problem involving the constitutionality of a statute (3867 Revised Code, 1935) providing for a decree of distribution. This statute provided that upon application by an executor or administrator the Register of Wills should have authority to issue a decree of distribution. It was urged that the statute was unconstitutional by reason of the fact that it purported to confer upon the Register a judicial power not authorized by the Constitution. The Court reviewed the decision in the *Robinson* case, supra, and came to the same conclusion reached by Judge Harrington in that case that the Register occupies a dual position. Judge Rodney, speaking for the Court, said 8 W.W.Harr. at page 607, 195 A. At page 292:

"The answer to this question brings us directly to a

consideration of *Robinson v. Robinson's Adm'r*, 3 Harr. 433, decided in 1842. That case, as we read it, distinctly held that the Register of Wills occupies a dual position: that under article 6, Sec. 17 of Constitution of 1792 (article 6, Sec. 22 of Const. of 1831 and article 4, Sec. 33 of Const. of 1897) the Register of Wills for certain purposes is a judge and constitutes the Register's Court; *that in adjusting and settling executors' or administrators' accounts under article 6, Sec. 16 of Constitution of 1792 (article 6 Sec. 21 of Constitution of 1831, and article 4, Sec. 34 of Constitution of 1897) The Register of Wills is not a judge but an accounting officer from whose allowances exceptions may be taken to the Orphans' Court.* (Emphasis added). With the opinion of the Robinson Case we are strictly bound. It was the opinion of the Court of Errors and Appeals, the highest Court of the state, and concurred in by the Chancellor and every law judge of the state having been heard on question reserved by the County Court.

Apply then the opinion to the present case. The administration account has been filed by the administrator and adjusted and settled by the register. This settlement by the Robinson Case was the act of an accounting officer and not a judical function. Can the Legislature using the ministerial act of settling the account as a basis, superimpose upon it the judicial function in the Register's Court Distribution of the Estate as shown by the account?

We cannot say that, under certain circumstances, this cannot be done. We can but point out some of the inherent and serious difficulties which, in some cases, may present themselves."* * *

Clearly, Judge Rodney had serious doubts about the difficulties which might present themselves in the attempt of the Register to exercise jurisdiction to issue decrees of distribution even when the jurisdiction is given by statute.

Even more serious difficulties stand in the way of any attempt by the Register to exercise general jurisdiction over decedents' estates. What process can he issue? What procedure does he follow? Does he exercise equitable or legal jurisdiction? What records are kept? What, if

any, appellate procedure is available? These and many more questions would have to be answered if it were ever held that the Register has general jurisdiction over decedents' estates. It may also be asked, if the Register has this general jurisdiction over decedents' estates, why have proceedings for the construction of wills always been in the Court of Chancery? There is a complete absence of any Delaware cases which even remotely suggest that there is any inherent general jurisdiction in the Register over decedents' estates and their administration by executors and administrators. A thorough search of every volume of the Delaware Law and Chancery reports fails to reveal a single instance of any such jurisdiction ever claimed for or asserted by the Register of Wills.

The views expressed in the *Robinson* and *Baldwin* cases, supra, as to the limit of the Register's jurisdiction was also approved by Vice Chancellor Pearson in the case of *Bodziak v. Theisen* (1946) 4 Terry 487, 50 A.2d 409. See also *Barr v. Blackstone,* (1940) 1 Terry 450, 13 A.2d 449, where Chief Justice Richards points out that although the Register of Wills is a constitutional officer, the Constitution defines his duties in only a very general way. Likewise, in *Delaware Trust Co. v. McCune* (1951) 32 Del.Ch. 113 at 118, 80 A.2d 507 Chancellor Wolcott recognized the limited judicial powers of the Register of Wills. *cf. Kennedy v. Truss,* (1940) 1 Terry 424, 13 A.2d 431, and *cf.* also *Worknot v. Millen's,* Admr., 1 Harr. 139, where the Court questioned whether or not the Register of Wills was a judge authorized to administer oaths.

Absent any inherent general jurisdiction in the Register over decendent's estate and their administration by executors and administrators, it becomes quite apparent that the Register has no authority or power to establish a "policy of his office * * * to allow as a debt of the deceased only one-half of the balance of any mortgage owed on property held by the deceased and a surviving spouse as tenants by the entirety." His only function as an accounting office is to ask the questions (1) Was there a debt? and (2) Was it paid? If the

answer to both is in the affirmative he must allow the item and pass the account submitted.