*Ex parte* John Dixon, executor of Amos Dixon, dec'd.

*New Castle, April T.* 1824.

One of two defendants in a joint judgment at law died. After his death his lands were sold in execution of another judgment which had been recovered against him alone. The proceeds of the sale went into

* Ante, p. 184.

the sheriff's hands and were sufficient to pay the joint judgment. Subsequently the lands of the surviving defendant were sold in execution of a decree in chancery and the proceeds of such sale brought into the Court for distribution. There being a surplus after satisfying the decree, a motion was made on behalf of the creditor in the joint judgment at law for the payment of that judgment out of the fund in equity raised by sale of the lands of the surviving defendant. *Held*, that the judgment had been satisfied by the sale of the lands of the deceased defendant and the receipt by the sheriff of the proceeds of sale, such proceeds being legally applicable to the judgment.

The death of one of two joint debtors in a judgment at law does not exonerate from the debt the lands of the deceased debtor, but they continue subject to the lien of the judgment.

In this case the deceased defendant in the joint judgment having been the principal debtor, his lands on that ground alone would be subjected in equity to the debt, and the sheriff would have been held responsible for its amount to the judgment creditor, so as to bar a claim by the latter in this Court to receive satisfaction out of the lands of the surety.

DISTRIBUTION OF FUNDS IN EQUITY.—SURVIVENCY OF JOINT JUDGMENT.—A decree had been made at the April Term, 1823, in a suit in equity between Joseph Wollaston and Thomas Phillips, for the payment by Phillips of the sum of $811.19. After several ineffectual proceedings for its collection, an order was made at the August Term, 1823, for the sale of certain real estate of Phillips to satisfy the decree. The land sold for $10,000, being more than sufficient to satisfy Wollaston and to discharge many other of the liens upon it, but not all. On the return of the order for sale, the money was brought into court and after the sale had been approved and confirmed by the Chancellor, and portions of the money applied to satisfy Wollaston's decree and also to pay some judgment creditors, *Brinckle*, on behalf of John Dixon, executor of Amos Dixon, deceased, moved the Chancellor that a debt or judgment recovered by Thomas Chandler, for the use of Amos Dixon, against the said Thomas Phillips jointly with one John Phillips, now dec'd, might be paid out of the money thus brought into court. *Wales*, on behalf of a subsequent judgment

creditor opposed the motion.   The questions raised were then brought before the Chancellor, upon a case agreed upon by the counsel, setting forth the following facts.

On the 29th of January, 1799, John Phillips and the aforesaid Thomas Phillips executed a bond to Thomas Chandler, jointly and severally, in £400, with a condition for the payment of £200, on the 29th of January, 1800, with interest,—annexed to which bond was a warrant of attorney to confess judgment.   Afterwards, judgment was entered jointly against the obligors, in the Court of Common Pleas, on the 25th of February, 1799, as of December Term, 1798.   The interest was paid regularly by the obligors to the 29th of January, 1807, and there were two other payments subsequently made, one of $80, on the 21st of February, 1811, and the other of $32, on the 21st of April, 1812.   John Phillips afterward died,—on the 25th of March, 1817.   After his death his real estate in New Castle County was sold by Francis Haughey, sheriff of that county, upon process sued out upon a judgment in the Supreme Court for the same county, rendered as of April Term, 1815, at the suit of John McCalmont and George McCalmont against the said John Phillips.   The proceeds of the sale were $1575.00.   The judgment of Chandler was the oldest judgment or lien against the land of John Phillips, dec'd.

On the 3rd of April, 1819, this judgment was indorsed for the use of Amos Dixon's executors.   Suits were instituted to the December Term, 1819, in the Court of Common Pleas, against sheriff Haughey and his sureties severally, on his official recognizance, for the use of Dixon's executors, which suits were founded on the default of the sheriff to apply so much of the proceeds of the sale as might be necessary for the payment of the Chandler judgment.   These suits were severally referred to George Read, Jr., James R. Black and James Booth, Jr., who reported in favor of the plaintiffs, and judgments were entered

thereon at the May Term, 1821, for $918.81 damages, the amount then unpaid on said principal judgment.

The said Francis Haughey and his sureties were at the time of said sale of the real estate insolvent, and have so continued, and nothing has been or can be recovered from them on the judgments. The consideration of the bond was a debt due from John Phillips to Thomas Chandler. It was for money lent by Chandler to John Phillips. Thomas Phillips was his surety.

*Brinckle,* in support of the motion.

By the death of John Phillips this judgment ceased to be a lien on his land at law. It survived against Thomas Phillips, and the creditor had no remedy against John's land. There could be no *scire facias.* It is the settled rule that under a joint judgment against two or more, if one dies, there is no remedy at law against the assets of the deceased debtor. 1 *Chitty's Pl.* 30-31. Where there is no remedy by execution process there can be no lien. The lien ceases whenever the remedy to enforce it is gone. 1 *Com. Dig.* 154, *Action, K.* 4. As in case of the suing out of a *ca. sa.* on a judgment, the judgment ceases to be a lien, because the plaintiff having elected to proceed against the body cannot sue out an execution against the land. *Freeman vs. Ruston,* 4 *Dallas R.* 214 : 2 *Binney's R.* 226 : 13 *Johns R.* 533. So, a judgment creditor having seized the goods of his debtor under a *fieri facias* cannot take execution against the land; and consequently the lien upon the land is gone. *Clerk vs. Withers,* 6 *Mod. R.* 299 : 1 *Salk R.* 322, *S. C.* These cases do not proceed upon the ground that the *ca. sa.* or the *fi. fa.* operates as a satisfaction in fact of the debt. If the judgment be against two jointly, although by the *ca. sa.* or *fi. fa.* the land of one debtor be discharged, the debt survives against the other. Execution, without a satisfaction, is no bar to the debt. *Cro. Car.* 75 : *Tidd's Prac.* 937.

It does not meet our claim to say that we have a remedy in equity against the estate of John Phillips. To this it is sufficient to answer that we have a remedy at law against Thomas Phillips under this judgment, and therefore we could not go into equity. But granting that there might be equitable relief, no man having the two remedies can be compelled to go into a court of equity. Dixon had at all times a right to rely on his remedy at law ; and on the death of John Phillips our remedy survived against Thomas. He became the sole debtor to us, and in such case a court of chancery will not force us into equity against the estate of the deceased debtor, but will leave us to our remedy against the survivor. The creditor in such case has no right in equity until there be a decree in equity ; and now the party can here demand of the sheriff his money, the land bound by his judgment having been sold by the sheriff ; and as the money is brought here into Court, the plaintiff, Dixon, is entitled to the order of this Court for the payment of his judgment. The plaintiff, Dixon, had no right to recover against sheriff Haughey at law ; for on the death of John Phillips his debt survived against Thomas, and the money going into the hands of Haughey on the sale of John's land under an execution of another creditor, we could not recover against the sheriff, because our debt survived against Thomas.

*Wales*, for a subsequent judgment creditor, against the motion.

The lands of John Phillips were sold by sheriff Haughey for a sum sufficient to pay the judgment now claimed, this judgment being the first lien against the lands. The money in the sheriff's hands was a satisfaction of the judgment, although the sheriff proved to be insolvent. Money raised under an execution is applicable to the judgments according to their priority. Payment to the sheriff is a

34

satisfaction, and the judgment is discharged. 3 *Binney's R.* 358. Therefore, the sale of John Phillips' lands for money sufficient to pay Dixon's judgment was a satisfaction of the judgment, and his only remedy remained against the sheriff.

It is objected, that the death of John Phillips severed the judgment at law. But Dixon cannot be now admitted to impugn his own acts. He sued the sheriff and recovered a judgment against him for the very money which had been made on the sale of John Phillips' lands. It is too late now to say that no such action will lie, and that no recovery could be had at law against the sheriff. As the case stands, Dixon has in fact had his remedy at law; and, therefore, a court of chancery will not now interfere.

But again, this judgment was for money loaned to John Phillips for his own use. Thomas was his surety. In equity the debt ought to be paid out the estate of John Phillips, and on a bill by the creditor, or by Thomas Phillips, for such relief the Court would so decree. And yet the Court is now asked to make itself instrumental in violating this equity of Thomas Phillips, the surety, by ordering the debt to be paid out of his lands.

*Brinckle*, in reply.

We are not affected by the sale of the lands of John Phillips. It was not a sale in execution of Dixon's judgment, but of the judgment of John and George McCalmont, who were third persons. We were not privy to the proceeding and had no notice of it. Sheriff Haughey and his sureties were insolvent from the time the money went into his hands, and we could not recover it. There is no equity in such a case against us; and, where the equities are equal, the Court will remit the parties to their remedies at law. It is true, that the debt was originally the debt of John Phillips, but Thomas became bound with

him in the bond as a principal. He has no equity against the creditor.

The case is simply that of a creditor having two remedies,—one at law, the other in equity. A party having several remedies may elect that which suits him best; as in the case of a creditor by both bond and mortgage; or of a landlord, having remedy by action or distress There is no equity to deprive us of our election.

RIDGELY, CHANCELLOR.—It has been contended by Mr. Brinckle, that by the death of John Phillips, this judgment survived and became the debt of Thomas Phillips alone; that it ceased to be a lien on the real estate of John Phillips, and that Dixon's executors had no remedy at law against the representatives of John Phillips, nor against sheriff Haughey : and further, that as Dixon's executors never recovered and could not recover the debt from the sheriff or his sureties, he has a better title in equity to receive it out of the proceeds of the real estate of Thomas Phillips, against whom the judgment survived, than any subsequent judgment creditor.

I doubt extremely the position that the lands of John Phillips became exonerated of this judgment by his death,—that the whole debt fell upon Thomas Phillips, and that he and his real estate became alone chargeable with it. By our Act of Assembly for taking lands in execution for the payment of debts, (1 Del. Laws, 109,) it is declared that all lands, tenements, or hereditaments, whatsoever within this government, where no sufficient personal estate can be found, shall be liable to be seised and sold upon judgment and execution obtained; and this provision is made, that no creditors may be defrauded of their just debts due to them from persons who have sufficient real estate to satisfy the same. This judgment, in the lifetime of John Phillips, was binding on his real estate, which, by the Act of Assembly, was liable to be

seised and sold upon an execution issued thereon. The law does not require that the execution should issue in the lifetime of the debtor, but it must be issued upon the judgment which binds the land; and the judgment binds the land until it is satisfied, or until the land is sold upon that or some other judgment. All the lands of both debtors were bound by the judgment, and I cannot perceive how this express provision can be avoided by the death of John Phillips. If by his death this judgment were to survive against Thomas Phillips alone, it might so happen that the Act of Assembly would be entirely defeated; for suppose a prior judgment to have been recovered against Thomas Phillips, of an amount greater than the value of his whole personal and real estate, the creditor would lose his debt, although John Phillips' real estate was sufficient to satisfy it.

In England lands were not liable to execution in personal actions for debt or damages except in the case of the King, or where the chattels of the debtor were not sufficient to answer the debt, or in an action of debt against an heir upon an obligation made by the ancestor. In the latter case, the reason was that the goods and chattels of the debtor belonged to the executor or administrator, and if the lands were not liable in the hands of the heir, the creditor could have no fruit of his action. 3 *Coke Rep.* 11, *Herbert's case:* 2 *Bac. Abr.* 328–9, *Execution A: Plowd.* 440 : *Hob.* 60. The statute of Acton Burnell (11 *Edw.* I) first made burgages devisable liable to be sold upon certain recognizances therein mentioned. Soon after, in 13 *Edw.* I, the statute of Merchants followed, which made it lawful for a debtor to sell his lands and tenements for the discharge of his debts (recognizances); and if this was not done in a reasonable time, the lands and goods of the debtor might be delivered to the merchant by a reasonable extent, to hold them until such time as the debt should be wholly levied. These statutes were made with a view to com-

merce, and to enable the merchant to secure his debts by the recognizances or bonds of record, and afterward, on failure of payment, to subject the lands as well as chattels to execution.   In the same year, the Statute of Westminster, 2nd, (13 *Edw.* 1) enacted, that "when a debt is recovered or " acknowledged in the King's courts, or damages awarded, " it shall be from henceforth in the election of him that " sueth for such debt or damages, to have a writ of *fieri* " *facias,* unto the sheriff, for to levy the debt of the lands " and goods ; or that the sheriff shall deliver to him all the " chattels of the debtor( saving only his oxen and beasts of " his plough) and the one half of his land, until the debt be " levied upon a reasonable price or extent ; and if he be " put out of that tenement he shall recover by a writ of " *novel disseisin,* and afterwards by a writ of *re-disseisin,* if " need be."   This last is the first statute which subjected lands to execution on a judgment or recognizance at common law.   The two former statutes were made to subject lands to execution to satisfy certain securities created by them ; as statutes merchant, statutes staple, and recognizances in nature of statutes staple.   3 *Coke Rep.* 11. *Herbert's case :* 2 *Bac. Abr.* 328, *Execution A ;* 2 *Saund. R.* 48-49, *part* 1, *Thretheroy vs. Achland, note*(3); 2 *Saund. R.* 67-68, *part* 1, *Underhill v. Devereaux,* and the notes by *Sergeant Williams,* to that case.   And by the statute of Westminster, 2d, as all the lands are bound, a joint lien shall not survive ; for in executions which concern the realty and charge the lands the sheriff cannot do execution on the land of one only.   3 *Coke Rep.* 14 *a.*   In 5 *Com. Dig.* 775, *Pleader,* (3 *L.* 3) it is said, that " if the judgment be against two and " one dies; a *scire facias,* shall be against the survivor, *quare* " execution against his goods and a moiety of his lands, and " against the heir and *terre tenants* of the deceased, *quare* " execution against them for a moiety of his lands *habere non'* " *debet.*"   He cites *Carth. R.* 107.   In *Smarte vs. Edson,* 1 *Lev. R.* 30, it was adjudged, that "if a judgment be against A

and B, and one dies, a *scire facias* lies against the survivor, and the plaintiff may proceed against him as to the personalty, or he may proceed against the survivor and the heir and charge the lands of both ; and if he will take execution on the lien real, the charge ought to be equally against both and the *scire facias* against both." And in *Pennoir vs. Brace*, 1 *Salk. R*, 320, *Holt, C. J.* held, that a *capias* or a *fieri facias*, being in the personalty might survive and might be sued against the survivors without a *scire facias*; otherwise of an *elegit*; for there the heir is to be contributory. From all the authorities it is clear that a personal execution will survive, but that a real one will not. See 3 *Coke Rep.* 14; 4 *Mod. Rep.* 315; 4 *Bac. Abr.* 417 *Scire Facias c.* 5, and the notes in *Saunders* before referred to.

The English statute which gives the *elegit*, is not more express in charging judgments on land, than is our Act of Assembly ; and, indeed, the words used are not as comprehensive as those of the Act of Assembly.

Upon the authorities before referred to, and upon the reason and intention of the Act of Assembly, I am of opinion that this judgment did not survive against Thomas Phillips alone, but that all the lands originally bound, remained liable to it, until the sale was made by sheriff Haughey of the lands of John Phillips upon the judgment of John and George McCalmont; and then the money in Haughey's hands was applicable to this judgment, and was a satisfaction of it. At that time the lands of Thomas Phillips became discharged, and had the plaintiff after that sale attempted to recover the money of Thomas Phillips, a court of equity would have restrained him.

I can have no doubt that in equity the land of John Phillips alone ought to have been subjected to this debt ; and that if a recovery had been had at law against Thomas, John would have been compelled by a court of equity to reimburse him. John borrowed and had to his own proper use the money for which this bond was given, and upon

which this joint judgment was entered. Thomas was his surety only. In such case a court of equity will presume a mistake in point of fact, in every case where a joint obligation has been given, to set up the debt against a deceased obligor. See 8 *Wheaton*, 214. Upon this principle the executor of Dixon had a remedy in equity against the estate, or rather the representatives of John Phillips, and the sheriff was responsible to him, on the sale, for the amount of the debt.

The executor of Dixon can take nothing by his motion, and this money must be distributed among the other judgment creditors of Thomas Phillips.