In the Matter of the Petition of HARRY ANDREWS' ADMINISTRATRIX to sell land for the payment of debts.

*(November* 13, 1943.)

LAYTON, C. J., SPEAKMAN and TERRY, J. J., sitting.

*Tunnell and Tunnell* for the First National Bank of Frankford.

*Howard W. Bramhall* for Mae Andrews.

Superior Court for Sussex County, No. 24, February Term, 1943.

SPEAKMAN, J., delivering the opinion of the Court:

The question for determination is whether the widow of a decedent, who dies intestate, is, upon her petition, entitled to receive the appraised value of her dower interest in the real estate of which her husband died seized, where the real estate has been ordered to be sold by the Orphans' Court, free and discharged of such dower interest, or whether such appraised value should be paid to a judgment creditor of the widow.

The Orphans' Court has general jurisdiction in all cases where a widow may be entitled to dower, to cause it to be assigned, laid off, secured and invested (3783, *Code* of 1935), and where in a proceeding brought in said Court, for the sale of real estate which is the subject of dower, as is the case here, the Court may, upon petition by the widow, direct such real estate to be sold free and discharged from the dower interest, and that such dower interest be appraised and paid to the widow out of the proceeds of the sale, in lieu and bar of her dower. (3783, *Code* of 1935)

Whether the Orphans' Court has the power and jurisdiction to determine the particular question in this case was raised by the appellant herein in the Court of Chancery in the case of *First Natl. Bank v. Andrews, (Del. Ch.)* 28 A. 2d 676, 677. In that case it was one of the contentions of the complainant that "under the practice long established in the

Orphans' Court, the complainant will not be permitted to assert its rights as a judgment creditor 'to the prejudice of the common law and statutory rights of Mae Andrews, widow of the deceased.' "

The decided cases in this State have held that when the Orphans' Court acquires jurisdiction in any proceeding, although it can take jurisdiction originally only under an express provision of a statute or constitutional grant, once that jurisdiction is acquired, it can and should exercise such powers, equitable or legal, and apply such principles as may be incidental or necessary to completely determine the matter before it. The Delaware cases are referred to and commented on by the Chancellor in *First Natl. Bank v. Andrews, supra,* and we do not deem it necessary to add to what was there said. The Chancellor's conclusion was that the fund in question is in the control of the Orphans' Court, and can only be distributed pursuant to its order,. and in view of its equitable powers the contentions of the claimants to the fund can be considered by that Court.

The controversy in this case arises out of the conflicting contentions of the claimants as to the interpretation of the provisions of an act approved in 1929 (*Chap.* 269, *Vol.* 36) amending *Chap.* 133 of the *Revised Code of* 1915, relating to executions. By the Act the first and fifty-fourth sections of said *Chap.* 133 were amended (4320 and 4373, *Code of* 1915). *Section* 4320 of the *Code of* 1915, as amended, is 4792 of the *Code of* 1935. It reads as follows:

"Lands, tenements and hereditaments and all right of dower and curtesy therein when no sufficient personal estate can be found may be seized and sold upon judgment and execution obtained."

By the amendment the words "and all right of dower and curtesy therein" were incorporated into the section.

The other section which was amended (4373, *Code of 1915*), provided, in part, that:

"Real estate sold by virtue of execution process shall be discharged from all liens thereon against the defendant * * * except [certain liens created by mortgage] * * *."

By the amendment there was added to the section the following:

"And said real estate shall also be discharged from all right of dower and curtesy therein of any defendant in said execution."

This section, as amended, is 4831 of the *Code of 1935*.

The appellant suggests that the amendment (*Chap.* 269, *Vol.* 36) "places a widow's dower rights in exactly the same position as the husband's fee simple absolute title has previously been, causing the dower, after it had become vested in the widow, to be subject to the lien of a judgment entered against her."

■ In Delaware it has long been settled that a money judgment is a lien upon the real estate owned by the defendant at and after the time of its entry. State, to *Use of Vickory, v. Vickory*, 1 *Harr.* 193. The lien attaches because of the right of the creditor to take the land in execution. *Brinckloe v. Brinckloe*, 2 *Early Del. Cas.* 628, 1 *Harr.* 508; *Griffin v. Reece*, 1 *Harr.* 508; *Flanagin v. Daws*, 2 *Houst.* 476; *Ex parte Dixon*, 1 *Del. Ch.* 261, 12 *Am. Dec.* 92; *Hagan et al. v. Chapman*, 1 *Penn.* 445, 41 A. 974; *Woolley on Del. Prac.* 564.

■ Dower after assignment is subject to levy and sale, *Woolley on Del. Prac.* 707, and the same is true as to curtesy consummate. In *Evans v. Lobdale*, 6 *Houst.* 212, 22 *Am. St. Rep.* 358, the Court of Errors and Appeals, in referring to the rights at common law of a husband in his wife's lands, said:

"The rights of the husband could be assigned by him to a purchaser, were liable for his debts, and could be seized and sold on execution by his creditors, and were therefore subject to the lien of any judgment that might be recovered against him."

The rights referred to by the Court consisted, not only of the estate of curtesy consummate, but also of the freehold interest in the wife's lands by right of the wife and the estate by the curtesy initiate in her lands on the birth of a child.

The husband's freehold jure uxoris and tenancy by the curtesy initiate, however, were abolished by the passage of the *Married Women's Acts* (*Chap.* 550, *Vol.* 14, and *Chap.* 165, *Vol.* 15), leaving only tenancy by the curtesy consummate remaining. *Evans v. Lobdale, supra.* In brief, by the *Married Women's Acts,* the husband's freehold estate in possession during coverture in his wife's lands was destroyed. The contingent interest that he has in her lands upon marriage which may thereafter ripen into an estate by the curtesy consummate, and thereupon become liable for his debts, still remains. This contingent interest, during coverture, we think might properly be referred to as the inchoate right of curtesy.

So, as the freehold estates of tenancy in dower and by the curtesy consummate could be seized and sold upon judgment and execution obtained at the time of the passage of the amendment (*Chap.* 269, *Vol.* 36), we can infer that it was not the intention of the Legislature to authorize something to be done as a result of an amendment which could have been done notwithstanding the amendment. We think that the phrase "all right of dower and curtesy therein" means rights of dower and curtesy other than dower after assignment and curtesy consummate.

Prior to the amendment of 1929 (*Chap.* 269, *Vol.* 36) a widow's right of dower before assignment could not be taken

in execution, *Graham v. Moore*, 5 *Harr.* 318; *Hagan et al. v. Chapman*, 1 *Penn.* 445, 41 A. 974, and the same can properly be said of the inchoate rights of dower and curtesy.

The decision in this case hinges upon the question whether the phrase "all right of dower and curtesy therein" as it now appears in 4792 of the *Code of* 1935 (4320 *Code of* 1915, as amended by *Chap.* 269, *Vol.* 36) means that rights of dower and curtesy, other than tenancies in dower and by the curtesy, can be levied on and sold separate and apart from the freehold to which they are attached, or whether they can only be sold in conjunction with such freehold. If we should confine our inquiry solely to the amendment (*Chap.* 269, *Vol.* 36) we would find that the meaning of its language is not perfectly clear, therefore the true intent of the Legislature must be gathered by applying the general rule applicable to statutory amendments, which is that a statute amended is to be construed in the same sense exactly as if it had read from the beginning as it does amended. *Myers v. Fortunato*, 13 *Del. Ch.* 148, 116 A. 623.

The statute as amended is published as *Chapter* 133 of the *Code of* 1935, and is entitled "Executions." The chapter consists of eighty-six sections. In general, the chapter provides certain procedure in connection with the taking in execution and sale of real and personal property, the arrest by capias and the sale of real estate under mortgage foreclosure proceedings. Upwards of twenty of the sections have reference to the sale of real estate upon execution on money judgments. Except as amended by *Chapter* 269, *Vol.* 36, the language of the last-mentioned sections are the same today as they were at the time of the approval of the *Code of* 1915, and their provisions are very explicit in many respects as to the procedure to be followed after real estate had been seized pursuant to an execution issued on a money judgment. Among other things, provision is made for advertisement, sale, deed, title of purchaser, apportionment of rent, dis-

charge of liens, payment of proceeds of sale (in certain cases) into court, the method of putting the purchaser into possession, and the effect of a reversal of the judgment after sale. No mention is made in the said *Chapter* 133 of the *Code of* 1935 of dower or curtesy, or any right thereof, except as incorporated therein by the amendment of 1929 (*Chap.* 269, *Vol.* 36).

As above stated, the appellant suggests that the amendment (*Chap.* 269, *Vol.* 36) "places a widow's dower rights in exactly the same position as the husband's fee simple absolute title had been, causing the dower after it had become vested in the widow to be subject to the lien of a judgment entered against her."

We assume that the appellant, in referring to "a widow's dower rights," means the "right of dower consummate, before assignment." The difficulty with the suggested construction of the language of the amendment is that it completely ignores the language of those sections of the statute which were not changed by the amendment. If the Legislature had intended that either inchoate rights of dower and curtesy or rights of dower consummate before assignment should be, as such, subject to seizure and sale upon execution process, it would have provided that the appropriate provisions of the statute applicable to the sale of real estate should be applicable to the sale of such dower and curtesy rights or it would have prescribed other procedure to be followed. The Legislature by the amendment went no further than to provide that real estate sold by virtue of execution process should be discharged from all rights of dower and curtesy therein of any defendant in said execution. We think that the scope of the amendment is clearly limited by the language of the two sections amended, and from that language it is our duty to arrive at the true intent of the Legislature.

When the *Code of* 1852 was adopted it prescribed certain rules for the construction of statutes which appear in

the *Code* as *Chapter* 5. *Rule VII* provided: "The words 'real estate', or 'real property,' shall be deemed synonymous with the phrase 'lands, tenements and hereditaments.'" The exact language was carried into the subsequent *Codes*, and it appears in the *Code of* 1935 as part of *Chapter* 1.

By substituting "real estate" for "lands, tenements and hereditaments" the pertinent language of the two sections, as amended, read together, is as follows: "Real estate and all rights of dower and curtesy therein may be seized and sold upon judgment and execution obtained. Real estate sold upon execution process shall be discharged from all rights of dower and curtesy therein of any defendant in said execution." As it is apparent that the meaning of this language is not enlarged by the language of the amended statute (*Chap.* 133, *Code of* 1935), we must take the amendment as we find it, we cannot, as urged by the appellant, enlarge the provisions of the amendment by construction. We think that the language of the amendment means nothing more than that real estate sold upon execution and judgment obtained shall be discharged from all rights of dower and curtesy therein of any defendant in the execution, when the real estate, together with any such rights of dower and curtesy, are seized and sold upon such execution. We do not think that it means that any such rights of dower or curtesy, prior to the time they become freehold estates, can be so seized and sold separate and apart from the real estate to which such rights are attached. Prior to the time the rights of dower and curtesy become freehold estates they are neither lands nor estates in land subject to be taken in execution as such, therefore such rights are not subject to the lien of money judgments, as the lien of such judgments attaches only because of the right to take land in execution. *Brinckloe v. Brinckloe,* 2 *Early Del. Cas.* 628, 1 *Harr.* 508; *Hagan et al. v. Chapman,* 1 *Penn.* 445, 41 A. 974. Consequently, as the dower interest of the widow, Mae Andrews, was not subject to the lien of the judgments of the appellant, the appraised

value of her dower interest was likewise not subject to such a lien, and the Court below did not err in ordering such appraised value paid to said widow.

There is one other matter which we think merits comment. The appellant argues, that it would be unjust to defeat the right of a creditor to collect the amount due him on a money judgment by execution process, by the simple device of selling a decedent's lands under proceedings in the Orphans' Court for the payment of debts. It does not necessarily follow that the rights of a creditor can be so defeated. By 3893 of the *Code of* 1935, it is provided that

"The Orphans' Court may, in its discretion, refuse an order for sale of real estate, or to approve a sale, if under the circumstances it is considered improper that such sale should be made; although it should sufficiently appear that the personal estate is not sufficient for the payment of the debts, or that said sale was regularly conducted."

Under this section the Orphans' Court has the jurisdiction to fully protect any creditor whose rights would be prejudiced by the sale of a decedent's real estate pursuant to its order, if a proper application is made in due season.

The order of the Court below will be affirmed.