VINCENT A. THEISEN, Administrator of the Estate of Alice Boyle Hoey, deceased,

*vs.*

EDWARD F. HOEY, ANNE M. HOEY LEARY, formerly Anne M. Hoey, and MASSACHUSETTS BONDING AND INSURANCE COMPANY, a corporation of the State of Massachusetts.

*New Castle, January 15, 1947.*

*William Prickett,* for complainant.

*Stewart Lynch,* for defendants.

HARRINGTON, Chancellor: The bill alleges and the demurrer admits: (1) that Alice Boyle Hoey died intestate,

a resident of the City of Wilmington, in 1939; (2) that at the time of her death, she was seized of a certain parcel of real property on Vandever Avenue and LaMotte Street, in the City of Wilmington, with buildings thereon erected, in which she had operated a laundry for some years prior thereto; (3) that on July 26, 1939 letters of administration were granted to the individual defendants, Edwin F. Hoey and Anne M. Hoey Leary, by the Register of Wills, for New Castle County, and they gave bond in the amount of $45,000, with Massachusetts Bonding and Insurance Company as surety thereon; (4) that on the death of the intestate "machinery, automobile trucks, equipment and other personal property, used by the deceased in the laundry business, formed an important part of the assets of the deceased's estate. Such personal property came into the hands of Hoey and Leary as administrators, as aforesaid"; (5) that "from about July 26, 1939 until about August 17, 1943, said Hoey and Leary, purporting to act as administrators, as aforesaid, without any order from the Register of Wills aforesaid, or from any other court having jurisdiction authorizing them to do so, operated said laundry, using said buildings and personal property which came into their hands as such administrators for that purpose"; (6) that on August 17, 1943, the defendants "Hoey and Leary were removed as administrators, and the complainant was appointed administrator of the estate of the deceased. Thereafter, complainant qualified and is now acting as such administrator"; (7) that "said Hoey and Leary have not filed an account of their administration on the estate of the deceased, but have neglected and refused to do so, notwithstanding orders of said Register to file such account"; (8) that "complainant is advised, believes and avers that there are debts of the deceased remaining unpaid and that said estate is insolvent in that there are not sufficient assets to pay the debts of the deceased."

The relief sought appears in the facts.

The questions raised by the demurrer of the individual defendants are (1) whether this court can entertain a bill for an accounting against the former and removed administrators of Alice Boyle Hoey, deceased, and (2) whether, in any event, an administrator *de bonis non* can file the bill, particularly when the estate is insolvent.

The demurrer of the Massachusetts Bonding and Insurance Company raises the same questions. It also questions whether it can be joined as a defendant in the bill for an accounting with the prior administrators, the principals in the administration bond, or whether the complainant's only remedy is by an action at law.

Executors or administrators are required to collect the assets, pay the debts of the deceased, and distribute any balance in hand to the persons entitled. It is neither a part of their duties, nor within their usual powers, to operate a business which has been conducted by the decedent during her lifetime. If this is done, the interested parties may, ordinarily, elect either to demand an account of the profits realized, if any, or a complete return of the assets used with interest; if there are losses, the administrators may be held accountable therefor. 24 *C.J.* 55; see also 33 *C.J.S., Executors and Administrators,* § 189; *Gilligan v. Daly,* 79 *N.J.Eq.* 36, 80 *A.* 994; *In re McGovern, Sur.,* 118 *N.Y.S.* 378. But the question is whether the rights of the parties can be determined in this court by a bill for an accounting. Independent of any other reasons for jurisdiction of this court in complicated mutual accounting cases (see *Davis v. Davis,* 1 *Del.Ch.* 256; *Illinois Finance v. Interstate Royal Credit Ass'n.,* 11 *Del.Ch.* 349, 101 *A.* 870), it is not denied that the English Court of Chancery had at least concurrent jurisdiction over the administration and settlement of decedents' estates at the time of our separation from that country, as the powers of the Ecclesiastical Court were quite limited. *Glanding v. Industrial Trust Co.,* 28 *Del. Ch.* 125, 45 *A.* 2d 553; 1 *Pomeroy. Eq.Jur.,* (5th Ed.) § 346; 4 *Pomeroy Eq. Jur.,* (5th Ed.) §§ 1127-1129, 1153. The jurisdiction exist-

ed whether the decedent died testate or intestate (4 *Pomeroy, supra,* § 1155), and was usually based on the fiduciary relation existing between his personal representatives and creditors, legatees or other persons entitled to share in the estate. 1 *Pomeroy, supra,* § 346; 4 *Pomeroy, supra,* §§ 1127, 1155; *In re Ortiz' Est.,* 26 *Del.Ch.* 240, 27 *A.2d* 368, 373. The right of discovery may be an important incident in accounting cases in equity, but it is not the real basis of the jurisdiction. *Adams Equity,* 74 *Law Libr.* *p. 220; 1 *Pomeroy, Eq.Jur., supra,* § 191. It is not denied that, in most respects, this court has substantially the same powers the old English Court of Chancery had in 1776. § 10, *Art. IV, Const. of* 1897; § 4637, *Rev. Code* 1935; *Glanding v. Industrial Trust Co., supra.* The proviso in *Section* 4637 of the *Code* is merely declaratory of the ancient equity rule with respect to jurisdiction. *Glanding v. Industrial Trust Co., supra.* When a court of equity once has jurisdiction, the mere fact that a statute gives somewhat similar powers to another tribunal seldom affects its original jurisdiction. *Glanding v. Industrial Trust Co., supra; State v. Wilmington Bridge Co.,* 2 *Del.Ch.* 58; *Fox v. Wharton,* 5 *Del.Ch.* 200; *Walker v. Caldwell,* 8 *Del.Ch.* 91, 67 *A.* 1085; 1 *Pom.Eq.Jur., supra,* §§ 176, 182; 4 *Pom.Eq.Jur., supra,* § 1153. Whether under such circumstances equity jurisdiction is abrogated is a question of intent, but statutory provisions of that nature are construed strictly and to have that effect must usually contain what amounts to express prohibitory and negative language, or affirmative language conferring exclusive jurisdiction on some other court, Id.; 1 *Pomeroy, supra,* § 281. The defendants claim that this court has never had the power to compel executors and administrators to account as the state constitutions have always given exclusive jurisdiction elsewhere. But other courts of this State had broad equity powers before the Court of Chancery was created as a separate tribunal in 1792. *Glanding v. Industrial Trust Co., supra.*

The Register of Wills has been a constitutional officer

since the *Constitution of 1792, § 17, Art. VI,* and that office is provided for by *Section 33, Article IV* of the *Constitution of 1897.* See *Wilmington Trust Co. v. Baldwin,* 8 *W. W. Harr.* (38 *Del.*) 595, 195 *A.* 287.

*Section 34* of *Article IV* of the *Constitution of 1897* also provides:

"An executor or administrator shall file every account with the Register of Wills for the county, who shall, as soon as conveniently may be, carefully examine the particulars with the proofs thereof, in the presence of such executor or administrator, and shall adjust and settle the same according to the right of the matter and the law of the land; which account so settled shall remain in his office for inspection; and the executor, or administrator, shall within three months after such settlement give notice in writing to all persons entitled to shares of the estate, or to their guardians, respectively, if residing within the State that the account is lodged in the said office for inspection.

"Exceptions may be made by persons concerned to both sides of every such account, either denying the justice of the allowances made to the accountant or alleging further charges against him; and the exception shall be heard in the Orphans' Court for the county; and thereupon the account shall be adjusted and settled according to the right of the matter and law of the land."

That provision also appeared in the *Constitution of 1792, Art. VI, § 16,* but the phrase requiring an executor or administrator to file "Every account with the Register of Wills for the county" then included guardians.

In considering the question of jurisdiction, it is also pertinent to consider certain supplementary statutory provisions. Ordinarily, an executor or administrator has one year from the date of his letters within which to settle an estate and pass his final account. § 3852, *Rev. Code* 1935. In any event, annual accounts are contemplated unless the Register of Wills for sufficient cause shall extend the time, or shall excuse an accounting in any year. § 3843, *Rev. Code* 1935. At least since 1806, the Register has been authorized to initiate contempt proceedings to compel executors to comply with their statutory duty to pass accounts. § 24,

*Chapt.* 21, *Vol.* 4, *Laws of Del.; Revised Code* 1829, *p.* 227, § 15; § 3843, *Rev. Code* 1935; *Wilmington Trust Co. v. Baldwin, supra.* The Act of 1806, § 24, *Chapt.* 21, *Vol.* 4, *Laws of Del.*, also applied to guardians. For some purposes, the Register of Wills clearly has judicial functions, but in settling and adjusting accounts of executors and administrators it seems that he is a mere accounting or auditing officer. The old Court of Errors and Appeals so held as early as 1842, and this court is bound by that decision. *Robinson v. Robinsons' Adm'r.*, 3 *Harr.* 433; see also *Wilmington Trust Co. v. Baldwin, supra; Peckard v. Price*, 5 *Del.Ch.* 239; *Bodziak v. Theisen, Adm'r.*, 4 *Terry* (43 *Del.*) 487, 50 *A.2d* 409. The justice of all allowances made to the accountants by the Register, or of any alleged further proper charges against them, may however be considered and determined by the Orphans' Court on appropriate exceptions filed. At least, since 1829 the Register of Wills has been given the power to suppress inventories or lists of debts entirely, or to declare them imperfect after hearing evidence. The testimony of the witnesses must be reduced to writing and signed and certified as depositions. In case of an appeal, they must be delivered with the inventory or list of debts to the Orphans' Court. § 3835, *Rev. Code* 1935; *Rev. Code* 1829, *p.* 223; *Rev. Code* 1852, *p.* 302. Though the Constitution provides for exceptions to executors or administrator's accounts to be heard by the Orphans' Court, the same section of the statute then provides: "The same rule shall apply when witnesses are examined before the Register touching any account." In practice, the filing and adjustment of an account before the Register of Wills is usually in the nature of an ex parte proceeding, but this statute seems to make a somewhat different method possible. Neither the action of the Register, in approving an account, nor the ultimate orders of the Orphans' Court with respect thereto, however, have the effect of decrees of a court of equity for the payment of money; and neither can be enforced without some action being taken in another court. *Robinson v. Robinsons'*

*Adm'r., supra;* see also *State, Use of Lynch, v. Barnett,* 2 *Marv.* 115, 42 *A.* 420.

On the petition of a succeeding administrator, *Section* 3811 of the *Revised Code of* 1935 provides for a summary proceeding in this court to compel administrators, who have been removed from their offices, to deliver "all the unadministered effects belonging to the deceased which shall be in their hands" at the time of their removal. The order for delivery may be enforced by attachment or sequestration; but the complainant seeks an accounting and the allegations of the bill do not bring the case within that provision.

Most of the above statutory provisions relate to the powers of the Register of Wills, but without determining the scope of the administrative powers of the Orphans' Court on exceptions filed to accounts passed before the Register of Wills (see *First Nat. Bank of Frankford v. Andrews,* 26 *Del. Ch.* 344, 28 *A.* 2d 676, 677; *In re Andrews,* 3 *Terry* 376, 34 *A.* 2d 700), the remedies of interested persons, other than in this Court, are quite circuitous, if not incomplete. But the question is whether it is, nevertheless, exclusive. See 1 *Pomeroy, supra,* §§ 281, 348-351.

Notwithstanding the provision in the *Constitution of* 1792, with respect to guardian accounts, Chancellor Ridgely in *Davis v. Davis,* 1 *Del.Ch.* 256, held that this court still had the same concurrent jurisdiction that the English Court of Chancery had in accounting cases between guardians and wards; that the remedy on the bond "even with the aid of the Orphans' Court (on exceptions filed to account passed before the Register of Wills) is not so complete as by a bill in this court; for in such cases at law, the burden of proof lies on the ward. In Chancery, the guardian may be compelled to give a full account under oath of the whole estate of the ward."

At the end of the opinion, and as an additional ground, the Chancellor also said that the jurisdiction of the court was the "less to be doubted" because the bill alleged that

"by color of the authority first vested in her," the guardian had continued to receive rents after the guardianship had expired. The suit was brought by the administrator of the deceased ward, and the case involved both intricate accounts and a fiduciary relation. See 4 *Pomeroy Eq.Jur.*, (*4th Ed.*) § 931. If this court has concurrent jurisdiction to compel executors or administrators to account, the exercise of that right would probably depend upon whether justice required it in the particular case. But even assuming, without deciding, that Chancellor Ridgely failed to give full effect to the constitutional language, this court has at least auxiliary and supplementary jurisdiction under special and unusual circumstances. *In re Ortiz' Est.*, 26 *Del. Ch.* 240, 27 *A. 2d* 368, 373; *Woerner's Amer. Law of Admin.*, §§ 500, 504; 1 *Pomeroy, 5th Ed.*, § 351; 4 *Pomeroy, supra*, §§ 1154*a*, 1154*b*.

In the *Ortiz'* case, the Vice-Chancellor said:

"It is well established that equity has and will exercise jurisdiction in cases concerning the administration of estates, which have been omitted from the constitutional or statutory grant of probate jurisdiction to other courts, or for which the methods or relief available before such courts are imperfect or inadequate."

Concurrent jurisdiction was not involved in that case; nor was the *Davis* case called to the court's attention. However, the inference to be drawn is that the Vice-Chancellor was of the opinion that the jurisdiction of this court over the accounts of executors and administrators was ordinarily somewhat limited, and there is ample authority for that position.

It is hardly conceivable that the constitution could have contemplated exclusive jurisdiction elsewhere in a complicated case of this nature, involving much more than a plain debit and credit account.

Furthermore, the conduct of the former administrators in operating a business for more than four years, without authority, using personal property belonging to the decedent's estate, constituted such a flagrant breach of duty,

akin to fraud, that the remedy before the Register of Wills and the Orphans' Court would be wholly inadequate and imperfect, even if the jurisdiction of this court is no longer concurrent. See *Pomeroy, supra,* § 351; *Fleming v. Fleming, et al.,* 135 *N.J.Eq.* 358, 38 *A.2d* 861. Nor should this court refuse to assume jurisdiction merely because the Register of Wills for New Castle County had ordered the individual defendants to pass accounts before the bill was filed, which they have failed to do, and for some reason removed them from office on August 17, 1943. This conclusion is not inconsistent with *Jones v. Maxwell Motor Co.,* 13 *Del.Ch.* 76, 115 *A.* 312.

At common law, an administrator *d. b. n.* could only recover from the prior executor or administrator of the deceased such personal property as was unadministered or remained in specie at the time of his removal; he could not recover either the proceeds or the value of the property sold, converted or wasted by the prior executor or administrator. *Potts v. Smith,* 3 *Rawle,* (Pa.) 361, 24 *Am. Dec.* 359; 8 *Encyl.Pl. & Pr.* 655; 4 *Bacon's Abridg.* (*Ex'rs. & Adm'rs.*) B 2, *p.* 24; 24 *C.J.* 1150. See also 34 *C.J.S., Executors and Administrators, p.* 1279. Money belonging to the decedent's estate, which had been kept by the removed executor or administrator separate and apart from his own funds, so that it was readily distinguishable, was however regarded as property in specie and was recoverable as such by an administrator *de bonis non. Potts v. Smith, supra; Allen, et al., v. Irwin,* 1 *Serg. & Rawle* 549; *Rich v. Doneghey,* 71 *Okl.* 204, 177 *P.* 86, 3 *A.L.R.* 355. But the mere fact that an account had been passed by the prior executors or administrators, showing a balance due the estate, did not come within that rule. *Allen, et al. v. Irwin, supra; Potts v. Smith, supra;* 21 *C.J.* 1152. See also 31 *C.J.S., Estoppel,* § 87.

*Section* 3811 of the *Revised Code of* 1935 provides:

"Whenever an executor, or administrator, is removed, or dies

before he closes the estate of the deceased, his co-executor, or administrator, or if there be none such, his successor shall be entitled to receive all the unadministered effects, including books and papers, which, at the time of such removal or death, shall be in his hands, or for which he is answerable, just allowances being made."

Somewhat different language was used in the *Code of 1829, p. 221.* It provided that:

"The succeeding executor or administrator shall be entitled to receive all the unadministered goods, chattels, rights, credits, money, securities, books and papers belonging to the estate of the deceased, which shall be in the hands of the executor or administrator removed or deceased, or for which such removed or deceased executor or administrator shall be answerable; just allowances being made."

That statute was construed in *Burton's Adm'r. v. Tunnell,* 5 *Har.* 182. The suit was brought by the surviving co-administrator on the separate bond of a removed administrator. The defendant's last administration account showed a balance against him of more than $9,700. The case was at issue on some of the pleas, and demurrers were filed to others. There was a verdict for the plaintiff in the Superior Court subject to the opinion of the old Court of Errors and Appeals on certain questions reserved.

The court said:

(1)   "* * * where an executor or administrator is removed from office, * * * the succeeding executor or administrator, is entitled to receive, not only the goods, chattels, rights and credits which remain specie, and money kept separate, which are, therefore, termed unadministered; but, also, all moneys and other assets, and all securities, books and papers belonging to the estate of the testator or intestate remaining in the hands of the removed * * * executor or administrator; or with which at the time of his removal or decease he is chargeable; all just allowances being made. And in case the same be not surrendered and delivered within a reasonable time, * * * it constitutes a breach of the last part of the condition * * *.

(2)   "* * * the evidence in this cause does not show that merely a residue, such as is mentioned in the first reserved question, remained in the hands of the said George Tunnell, at the time of his removal from office as administrator of Miers Burton, deceased; but on the contrary that there was a large balance of assets in his hands

belonging to the estate of the said intestate, to be applied in the due course of administration, * * * and for which the said George Tunnell, and the sureties in the administration bond executed by him and Elizabeth Burton, now deceased, are answerable."

The court, therefore, concluded that the statute had broadened the common-law rule, and under its provisions the removed administrator was responsible to his surviving co-administrator for any "balance of assets in his hands belonging to the estate of the intestate, to be applied in the due course of administration," and for which he was answerable on his bond.  See also 8 *Ency. P. & Pr.* 656, 721; *Yancy's Adm'r. v. Yancy*, 183 *Ky.* 512, 209 *S.W.* 858, 3 *A.L.R.* 1252; *State, Use of Browne v. Rogers*, 1 *Houst.* 569; compare *State, Use of Deputy v. Bloxom, et al.*, 1 *Houst.* 446.  The same principle governs this case, though Alice Boyle Hoey died insolvent.  This does not mean, however, that no other interested person could have filed a bill against the individual defendants.  Nor does the change in the present statutory language affect the principle involved in *Burton's Adm'r. v. Tunnell.*  Furthermore the bond given by Edward F. Hoey and Anne M. Hoey Leary, and prescribed by the present statute, *Rev. Code* 1935, § 3813, uses the same language quoted above from the *Revised Code of* 1829, at page 221.

At this stage of the case I leave undecided the question whether the complainant can recover anything for the illegal use of the decedent's real property.

A surety on an administrator's or executor's bond is at least a proper party to a bill seeking an accounting. *Filley v. Van Dyke*, 75 *N. J. Eq.* 571, 72 *A.* 943; *Farmers & Mech. Bank v. Polk*, 1 *Del. Ch.* 167.

Should there be a decree against the prior administrators for a balance ascertained to be due the estate, the surety would be liable on the administration bond.  Massachusetts Bonding and Insurance Company claims, however, that it can only be sued in an action at law.  *Rorback v. Dor-*

*sheimer*, 25 *N. J. Eq.* 516; *Thayer-Martin v. Underhill*, 115 *N. J. Eq.* 526, 171 *A.* 687. But in order to prevent a multiplicity of suits, the whole controversy can be determined in one action, though no special circumstances are alleged showing that an ultimate remedy at law would be difficult or uncertain. *Payne v. Hook*, 7 *Wall.* 425, 19 *L. Ed.* 260; *Green v. Creighton*, 23 *How.* 90, 16 *L. Ed.* 419; 8 *Encyl. Pl. & Pr.*, 717, 727, 728; 25 *C.J.* 1095. See also 34 *C.J.S., Executors and Administrators, p.* 1211. In reaching this conclusion, I am aware that some state courts hold that an allegation of some such circumstances is essential to the power of the court of equity to enter any decree against the surety on the bond. *Carow v. Mowatt*, 2 *Edw. Ch.* 57; *Taylor v. Taylor*, 2 *Rich. Eq.*, *(S.C.)* 123; 8 *Encyl. Pl. & Pr.*, 726, 727; 24 *C.J.* 1088, see also 34 *C.J.S., Executors and Administrators*, 974, and note. While these cases are persuasive, this court is not bound by them, and the convenient administration of justice seems to require the application of a broader rule.

The demurrers are, therefore, overruled, and an appropriate order will be entered.