**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SELENA E. MOLINA
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: April 26, 2023
Date Submitted: January 26, 2023

Charles J. Durante, Esquire
Regina S. Schoenberg, Esquire
Connolly Gallagher LLP
1201 North Market Street, 20th Floor
Wilmington, Delaware, 19801

Jason C. Powell, Esquire
Thomas J. Reichert, Esquire
The Powell Firm, LLC
1813 N. Franklin St.
Wilmington, DE 19802

Stacey Henry, *pro se*
207 Barrett Street
Wilmington, DE 19802

> Re: *IMO The Estate of Willie J. Snow*,
> C.A. No. 2022-0106-SEM

Dear Counsel and Parties:

Pending before me is a petition to sell real property to pay debts of an estate.

Although the petitioner has met the statutory mandates, an interested party contests

the sale arguing that she has lived in the property since the decedent's death and paid

various expenses related thereto. On the record before me, I find the petition should

be granted. This is my final report.

## I.     BACKGROUND

This case arises from the estate of Willie J. Snow (the "Decedent"), who died on October 29, 2015.[1]  The Decedent left behind his wife Daisy Snow (the "Interested Party") and ten (10) children.[2]  He also left behind a last will and testament dated August 22, 2002 (the "Will").[3]  In the Will, the Decedent nominated one of his sons, James L. Snow (the "Petitioner") as executor and directed that all his property, including his real property located at 3 Blue Rock Road in Wilmington, Delaware (the "Property") pass to thirteen (13) named beneficiaries in equal shares, *per stirpes*.[4]  Those beneficiaries were his children, some of which predeceased him, and his "friend, Daisy Hale[.]"[5]  "Haile" was the Interested Party's maiden name; she married the Decedent in June of 2004, after the Will was executed.[6]

---

[1] Docket Item (D.I.) 1 ¶ 1.

[2] *In re Willie J. Snow*, ROW 163257, D.I. 1. "Because the Register of Wills is a Clerk of the Court of Chancery, filings with the Register of Wills are subject to judicial notice." *Arot v. Lardani*, 2018 WL 5430297, at *1 n.6 (Del. Ch. Oct. 29, 2018) (citing 12 *Del. C.* § 2501; Del. R. Evid. 202(d)(1)(C)).

[3] ROW D.I. 5.

[4] *Id.* at ¶ 2-3.

[5] *Id.* at ¶ 2.

[6] D.I. 19.

After the Decedent's death, the Petitioner opened an estate and was granted letters testamentary on March 29, 2016.[7] The estate has been slow moving. For example, the Petitioner did not file an inventory of the estate until on or around April 3, 2019.[8] During that time, the Interested Party, although only a 1/13 owner of the Property under the Will, continued to live in the Property, where she had lived with the Decedent before his death.[9]

While the Petitioner administered the estate, the Interested Party "contributed to the expenses to maintain the Property[.]"[10] Specifically, the Interested Party avers that she contributed towards "New Castle County property and sewer payments, homeowners' insurance, water service, gas and electric service, trash service, and general maintenance service."[11] The Interested Party provided an itemized list and some documentation supporting the following expenses: New Castle County taxes and sewer ($19,768.30), homeowners' insurance ($8,168.34), water bills ($7,885.00), electric and gas bills ($26,369.60), trash bills ($8,790.00), and other household expenses including major appliances ($2,300.00), lawn service

---

[7] ROW D.I. 10.

[8] ROW D.I. 18.

[9] *See* D.I. 18.

[10] *Id.*

[11] *Id.*

($3,430.00), and home maintenance and repairs ($4,200.00).[12] Furthermore, the Interested Party contends she made a payment of $4,214.17 to Fay Financing, LLC to satisfy an outstanding lien on the Property.[13]

The Interested Party's payments did not, however, fully resolve the New Castle County taxes and fees assessed against the Property. As of January 2022, $33,931.00 was still owed to the County.[14] Before his death, the Decedent was also assessed attorneys' fees, which he owed to Connolly Gallagher LLP and Suzanne I. Seubert, Esquire in the total amount of $21,910.65.[15] The Decedent also owed approximately $20,000.00 toward a mortgage assigned to Greenwich Revolving Trust.[16]

In addition to these debts, the Decedent's estate has incurred, and will continue to incur, numerous expenses. As of January 2022, the estate had incurred $1,265.65 in administrative expenses.[17] The Decedent's funeral expenses were

---

[12] D.I. 18, Ex. A.

[13] *Id.*

[14] D.I. 1, Ex. D. As of August 2022, that amount increased to $36,889.00. *See* D.I. 19.

[15] D.I. 1, Ex. D.

[16] *Id.*

[17] *Id.*

$10,375.00 and would be reimbursable from his estate if funds were available.[18] But the inventory reflects that the only assets of the estate are the Property and another parcel of real property in which the Decedent owned a 50% interest.[19]

Thus, the Petitioner filed the underlying petition to sell the Property to pay the debts of the estate on January 31, 2022 (the "Petition").[20] On February 28, 2022, I issued a preliminary order scheduling a hearing on the Petition for April 12, 2022.[21] During the hearing, there were no objections and I found the Petitioner met the statutory requirements and issued an oral ruling that the Petitioner may list the Property for sale and enter into a contract contingent on this Court's approval.[22] Later in the day, the Interested Party and one of the Decedent's children, Stacey Henry, arrived at the courthouse, voiced an objection, and were directed to submit a written response to the Petition.[23]

---

[18] *Id.*

[19] D.I. 1, Ex. C.

[20] D.I. 1.

[21] D.I. 3. Proper notice was given to all interested parties in advance of the hearing. D.I. 4, Ex B.

[22] D.I. 5.

[23] D.I. 9.

That written response and the Petitioner's opposition to it were, in large part, resolved by my June 24, 2022 order.[24] Therein, I overruled untimely challenges to the Will and an unsupported argument that the estate's debts did not exceed its assets—they do.[25] But I found that further proceedings were warranted on the Interested Party's contention that the request to sell should be denied because she paid toward the Property's expenses.[26] Thus, I stayed my earlier oral ruling, ordered further submissions, and strongly encouraged the parties to consider alternative dispute resolution.[27] After reviewing the parties' submissions, I went a step further and formally referred this matter to mandatory mediation under Court of Chancery Rule 174.[28] But the parties have been unable to settle their dispute.[29] Thus, on January 26, 2023, I took this matter under advisement.[30]

---

[24] D.I. 17.

[25] *Id. Compare* D.I. 1, Ex C, *with* D.I. 1, Ex. D.

[26] D.I. 17.

[27] *Id.*

[28] D.I. 22.

[29] D.I. 24.

[30] D.I. 25.

## II.    ANALYSIS

The question before me is whether the Interested Party has put forth sufficient justification to prevent a court-ordered sale of the Property.  I find the answer should be "no" and the Petition should be granted.[31]

Under Delaware law, real property of a decedent passes upon the decedent's death to their intestate heir(s) or named beneficiary(ies) under the decedent's will.[32] But that property is subject to divestment if and as necessary to pay debts of the estate.[33]  Under 12 *Del. C.* § 2701, "[w]hen the personal estate of a decedent is not sufficient to pay the decedent's debts, the decedent's executor or administrator may present to the Court . . . a petition outlining such facts, and praying for an order for sale of the whole, or such part thereof, if the personal estate is not sufficient for that purpose."  After proper notice to all interested parties, this Court can grant such a

---

[31] In my June 24, 2022 order, I reasoned: "when someone passes with a spouse and a will that predates their marriage, the spouse inherits as if the decedent died intestate; because the Decedent has surviving issue who are not also issue of Ms. Snow, Ms. Snow's interest in the estate is one half of the intestate personal estate, plus a life estate in the intestate real estate[.]"  D.I. 17 (internal citations omitted). But it is now clear that the Interested Party is the "Daisy Hale" named in the Will.  Thus, I hereby amend that portion of my order and, as confirmed herein, find the Interested Party is a 1/13 beneficiary of the Decedent's estate.

[32] *In re Wiggins*, 2022 WL 1022712, at *4 (Del. Ch. Mar. 29, 2022) (citations omitted).

[33] *See* 12 *Del. C.* § 2701.

petition "if it appears that there is a deficiency of personal estate for the payment of the decedent's debts[.]"[34]

The statutory scheme provides two "outs" through which this Court can refuse a sale, despite a petitioner's showing that the estate's debts exceed its assets. The first is 12 *Del. C.* § 2707, which provides:

> If any devisee, or person holding any part of the real estate, contributes so much as the Court of Chancery adjudges to be devisee's or other person's proportionable part towards payment of the outstanding debts, no order shall be made for the sale of the premises owned or held by the devisee or other person.

The second is 12 *Del. C.* § 2717, which provides:

> The Court of Chancery may refuse an order for sale of real estate or may refuse to approve a sale, if under the circumstances it is considered improper that such sale should be made, although it should sufficiently appear that the personal estate is not sufficient for the payment of the debts, or that the sale was regularly conducted.

I address these in turn and find the Interested Party is not entitled to relief under either.

---

[34] 12 *Del. C.* § 2704. But "[n]o more shall be sold than the Court deems sufficient for that purpose, unless the Court considers that the condition of any premises is such that a part thereof, merely sufficient, could not be laid off and sold without injury to the whole, in which case the Court may order the whole or any part of such premises to be sold, as may be deemed best for the parties interested." 12 *Del. C.* § 2704.

### A. The Interested Party has not demonstrated proportionable payment.

Section 2707 of Title 12 requires an interested party to demonstrate that she contributed her "proportionable part towards payment of the outstanding debts[.]" Case law addressing this section is sparce, but Chancellor Brown, in *Estate of Speare*,[35] explained that this section, coupled with notions of equity, supports the conclusion that parties with an equitable ownership interest in property are entitled "to prohibit the sale of the property to another upon the contribution by them to the administrator of sufficient funds to discharge the debts of the estate."[36]

Here, the outstanding debts of the estate total $107,482.30.[37] Because the Interested Party is a beneficiary of 1/13th of the estate, her proportionable part of the outstanding debts of the estate would be $8,267.86. As explained herein, the Interested Party's relevant contributions fall short.

In large part, the Interested Party's contributions were to maintain the Property.[38] Her payments toward homeowners' insurance, water, electric, gas,

---

[35] 1982 WL 149633 (Del. Ch. Aug. 11, 1982).

[36] *Id.* at *4.

[37] The debts and expenses listed in Ex. D to the Petition add up to $107,482.30, rather than the reflected $159,767.95, which appears to be a typographical error. D.I. I, Ex. D.

[38] D.I. 18 ¶ 3.

appliances, trash, lawn care, maintenance, and repairs, are not debts of the estate but rather property expenses of the post-death co-owners and resident(s). But the Interested Party did contribute toward one debt of the estate—a lien on the Property taken out by the Decedent before his death, and toward which the Interested Party has made payments since the Decedent's death.[39] In total she paid $4,214.17 toward that lien. Because the only relevant contribution ($4,214.17) falls below the Interested Party's proportionable payment ($8,267.86), the Interested Party cannot invoke Section 2707 to prevent a sale of the Property to pay the Decedent's debts.

B.     **The Interested Party did not identify any circumstances that would render the sale of the Property improper.**

Under 12 *Del. C.* § 2717, this Court may refuse an order for sale of real estate, "if under the circumstances it is considered improper that such sale should be made, although it should sufficiently appear that the personal estate is not sufficient for the payment of the debts, or that the sale was regularly conducted."[40] Like Section 2707, there is a dearth of authority applying Section 2717.[41] "[T]o determine and give

---

[39] *Id.* at ¶ 9.

[40] 12 *Del. C.* § 2717.

[41] *Cf. In re Andrews' Est.*, 34 A.2d 700, 704 (Del. Super. 1943) (addressing an appeal from the Orphans' Court and emphasizing the equitable considerations available and that the prior version of Section 2717 could be invoked "to fully protect any creditor whose rights would be prejudiced by the sale of a decedent's real estate pursuant to its order, if a proper application is made").

effect to legislative intent[,]" I read Section 2717 to invoke equitable considerations within this Court's core jurisdiction.[42]

There is nothing in the record before me that demonstrates granting the Petition would be improper or inequitable. That the Interested Party may have covered the Property's expenses without contribution from her co-owners (or conversely, lived in the Property rent free) is a matter that may be resolved between the co-owners. It is not a sufficient basis to deny the Petition and leave the debts of the Decedent's estate unpaid. Likewise, although estate administration has been slow moving, there has been no argument that the delay amounts to laches or otherwise cuts against the estate's compelling need to sell the Property to pay the Decedent's debts.[43] Thus, I find refusal under Section 2717 is not warranted.

## III. CONCLUSION

For the above reasons, the Petition should be granted. The Petitioner has demonstrated that the debts of the estate exceed its assets and a sale is necessary to satisfy those debts. Conversely, the Interested Party has failed to demonstrate that

---

[42] *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999).

[43] Nor would such an argument appear viable. *See Est. of Tribbett ex rel. Keiffer v. Tribbett*, 2009 WL 1743722, at *4 (Del. Ch. June 5, 2009) (rejecting a laches argument made in opposition to a petition to sell property to pay debts of an estate, relying on "the ten-year statute of limitations embodied in 12 *Del. C.* § 2109").

she paid her proportionable part of those debts or any other justification to deny the statutorily authorized sale. Thus, I recommend that my prior oral ruling that the Petitioner may list and market the Property for sale, subject to further approval by this Court, be reinstated.

This is my final report and exceptions may be filed under Court of Chancery Rule 144. The stay of exceptions to my June 24, 2022 order is hereby lifted.

Respectfully submitted,

/s/ *Selena E. Molina*

Master in Chancery